[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State,* Slip Opinion No. 2016-Ohio-478.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-478

THE STATE EX REL. OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* THE STATE OF OHIO ET AL., APPELLANTS AND CROSS-APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State,* Slip Opinion No. 2016-Ohio-478.]

*2011 Am.Sub.H.B. No. 153 does not violate one-subject rule of Article II, Section 15(D), Ohio Constitution—"Prison-privatization provisions" do not violate prohibition in Article VIII, Section 4, Ohio Constitution against state financial involvement with private enterprise— State Employee Relations Board has exclusive jurisdiction to determine whether employees of privately owned or operated prisons are public employees, as defined by R.C. 4117.01(C).*

(Nos. 2014-0319—Submitted May 20, 2015—Decided February 11, 2016.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 12AP-1064, 2013-Ohio-4505.

_____

**FRENCH, J.**

{¶ 1} This appeal asks whether 2011 Am.Sub.H.B. No. 153 ("H.B. 153"), the budget bill for the 2012-2013 biennium, violates the Ohio Constitution. Specifically, we consider whether H.B. 153 violates the one-subject rule in Article II, Section 15(D) of the Ohio Constitution or the prohibition against state financial involvement with private enterprise in Article VIII, Section 4 of the Ohio Constitution. We must also decide whether a court of common pleas, or only the State Employee Relations Board ("SERB"), has jurisdiction to determine whether employees of privately owned or operated prisons are public employees, as defined by R.C. 4117.01(C). We hold that H.B. 153 is constitutional and that SERB has exclusive jurisdiction to determine public-employee status under R.C. 4117.01(C).

*Background*

{¶ 2} In H.B. 153, the General Assembly appropriated operating funds to the state government and its programs for the biennium beginning July 1, 2011, and ending June 30, 2013. The title of the bill states that it provides "authorization and conditions for the operation of programs, including reforms for the efficient and effective operation of state and local government." We are specifically concerned here with provisions in H.B. 153 that deal with the operation, management, and sale of state correctional facilities.

{¶ 3} Both before and after the enactment of H.B. 153, R.C. 9.06(A)(1) permitted state and local governments to contract for the private operation and management of correctional facilities. Those contracts are subject to numerous conditions, the most salient of which is that "the contractor shall convincingly demonstrate to the public entity that it can operate the facility with the inmate capacity required by the public entity and provide the services required in this section and realize at least a five per cent savings over the projected cost to the public entity of providing these same services * * *." R.C. 9.06(A)(4). Section

2

753.10 of H.B. 153 modified prior law governing contracts for the private operation and management of a state correctional institution in several ways. As relevant here, section 753.10 identified five correctional facilities—Lake Erie Correctional Facility, Grafton Correctional Institution, North Coast Correctional Treatment Facility, North Central Correctional Institution, and North Central Correctional Institution Camp—and authorized the Director of Administrative Services and the Director of Rehabilitation and Correction to contract for the operation, management, *and sale* of those facilities. H.B. 153, section 753.10(B)(1), (C)(1) and (2), (D)(1) and (2), (E)(1) and (2), (F)(1) and (2), and (G)(1) and (2). H.B. 153 also added subsection (J) to R.C. 9.06. The new subsection sets out conditions that apply if a private contractor executes a contract not only to operate and manage a correctional facility, but also to purchase that facility from the public entity. Collectively, we refer to these portions of H.B. 153 as the "prison-privatization provisions."

{¶ 4} Two private companies took advantage of the prison-privatization opportunity. Respondent-appellee Management & Training Corporation ("MTC") signed a contract for the operation and management of North Central Correctional Institution (renamed North Central Correctional Complex). And respondent-appellee Corrections Corporation of America ("Corrections Corporation") purchased Lake Erie Correctional Facility[1] and signed a related operation and management contract.

{¶ 5} Appellees and cross-appellants are the Ohio Civil Service Employees Association, the labor union representing Ohio's public employees; ProgressOhio.org; and numerous former employees of North Central Correctional

---

[1] The Governor's Deed names CCA Western Properties, Inc., as the grantee.

Complex, Lake Erie Correctional Facility, and Marion Correctional Institution.[2] We refer to appellees and cross-appellants collectively as "OCSEA."

{¶ 6} OCSEA filed this action in the Franklin County Court of Common Pleas. In its amended complaint, OCSEA named as defendants-respondents MTC, Corrections Corporation, CCA Western Properties, Inc., and the following government entities, officials, and agencies: the state of Ohio; Governor John R. Kasich; Attorney General Mike DeWine; Secretary of State Jon Husted; Auditor of State David Yost; the Department of Rehabilitation and Correction ("DRC") and its director, Gary C. Mohr; the Department of Administrative Services ("DAS") and its director, Robert Blair; Ashtabula County Treasurer Dawn M. Cragon; Ashtabula County Auditor Roger A. Corlett; Ashtabula County Recorder Judith A. Barta (now retired); State Treasurer Josh Mandel; and the Office of Budget and Management and its director, Timothy S. Keen. We refer to the government defendants-respondents collectively as the "state respondents."

{¶ 7} OCSEA's amended complaint raised several claims. As relevant here, it alleged the following: (1) H.B. 153, in its entirety, violates the one-subject rule contained in Article II, Section 15(D) of the Ohio Constitution, (2) even if the bill is not found to be unconstitutional in its entirety, the prison-privatization provisions in H.B. 153 violate the one-subject rule, and (3) the prison-privatization provisions in H.B. 153 violate Article VIII, Section 4 of the Ohio Constitution, which prohibits the joinder of public and private property rights. OCSEA requested relief in the form of, inter alia, a declaration that H.B. 153 is unconstitutional in its entirety and that any contracts entered into under its provisions are null and void, as well as a writ of mandamus ordering the reinstatement of the individual plaintiffs to their positions with full back pay and benefits. In the alternative, it sought a

---

[2] Two of the individual employee-plaintiffs were allegedly displaced from their positions at the Marion Correctional Institution by individuals laid off from North Central Correctional Complex who had more seniority.

4

declaratory judgment that MTC employees who work at North Central Correctional Complex are public employees, as defined by R.C. 4117.01(C), and are entitled to the corresponding public-employee benefits.

{¶ 8} The state respondents filed a motion to dismiss OCSEA's amended complaint pursuant to Civ.R. 12(B)(6), for failure to state a claim on which relief can be granted, and Civ.R. 12(B)(1), for lack of subject-matter jurisdiction. The trial court dismissed OCSEA's complaint in its entirety. The trial court held that it lacked jurisdiction to determine individual employee rights, including whether the named employees were public employees under R.C. 4117.01(C). The court further held that it had jurisdiction over the constitutional challenges to H.B. 153, but that OCSEA failed to state a claim that H.B. 153 was unconstitutional.

{¶ 9} The Tenth District Court of Appeals reversed the dismissal of OCSEA's one-subject-rule claim and ordered the trial court to hold an evidentiary hearing on remand to determine whether H.B. 153 has only one subject and, if not, to sever any offending provisions. 2013-Ohio-4505, 2 N.E.3d 304, ¶ 24. But the Tenth District affirmed the dismissal of OCSEA's claim that H.B. 153 violates the prohibition against joint public-private property ventures in Article VIII, Section 4 of the Ohio Constitution and OCSEA's claim for a declaration that the individuals working at North Central Correctional Complex are public employees.

{¶ 10} The state respondents and MTC filed discretionary appeals in this court, and OCSEA filed a cross-appeal. We accepted jurisdiction. 139 Ohio St.3d 1428, 2014-Ohio-2725, 11 N.E.3d 284.

{¶ 11} The parties assert seven propositions of law, which we distill to the following issues: (1) whether the prison-privatization provisions of H.B. 153 or H.B. 153 in its entirety violate the one-subject rule, (2) whether a provision in the contract for the sale of Lake Erie Correctional Facility that requires the state to pay an annual ownership fee constitutes a subsidy that violates Article VIII, Section 4

of the Ohio Constitution, and (3) whether the courts of common pleas can determine public-employee status under R.C. 4117.01(C).

*Analysis*

{¶ 12} To begin our analysis, we look to the applicable standards of review. We review dismissals pursuant to Civ.R. 12(B)(6) de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. Therefore, in reviewing a Civ.R. 12(B)(6) motion to dismiss, we presume that the complaint's factual allegations are true and make all reasonable inferences in the nonmoving party's favor. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). We may affirm a judgment granting the motion only when there is no set of facts under which the nonmoving party could recover. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Appellate courts similarly apply a de novo standard when reviewing a motion to dismiss for lack of subject-matter jurisdiction under Civ.R. 12(B)(1). *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, 834 N.E.2d 15, ¶ 13 (10th Dist.). Thus, on that issue, we consider whether the complaint raises any cause of action cognizable by the forum. *Id.*

{¶ 13} Beyond these standards based upon the Civil Rules, OCSEA's constitutional claims bring into play additional considerations. When a claim challenges a statute's constitutionality, we begin with the presumption that the statute is constitutional. *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 6. We will declare the statute unconstitutional only if we conclude that it is unconstitutional beyond a reasonable doubt. *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46, 47, 554 N.E.2d 97 (1990).

{¶ 14} With these standards in mind, we turn to OCSEA's specific claims.

A. The One-Subject-Rule Challenges

{¶ 15} Article II, Section 15(D) of the Ohio Constitution contains the one-subject rule: "No bill shall contain more than one subject, which shall be clearly

expressed in its title." The purpose of the rule is to prevent logrolling, which occurs when legislators combine disharmonious proposals in a single bill to ensure passage of proposals that might not have won acceptance on their own. *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142-143, 464 N.E.2d 153 (1984).

{¶ 16} Although this court has described the one-subject rule as mandatory, *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, ¶ 54, our role in its enforcement remains limited. To accord appropriate deference to the General Assembly's law-making function, we must liberally construe the term "subject" for purposes of the rule. *State ex. rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 498, 715 N.E.2d 1062 (1999).

{¶ 17} The one-subject rule does not prohibit a plurality of topics, only a disunity of subjects. *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections*, 62 Ohio St.3d 145, 148, 580 N.E.2d 767 (1991). The mere fact that a bill embraces more than one topic is not fatal as long as a common purpose or relationship exists between the topics. *Hoover v. Franklin Cty. Bd. of Commrs.*, 19 Ohio St.3d 1, 6, 482 N.E.2d 575 (1985). And we only invalidate statutes as violating the one-subject rule when they contain "a manifestly gross and fraudulent violation." (Emphasis deleted.) *Dix* at 145. That standard recognizes not only the General Assembly's great latitude in enacting comprehensive legislation, but also that

> there are rational and practical reasons for the combination of topics on certain subjects. It acknowledges that the combination of provisions on a large number of topics, as long as they are germane to a single subject, may not be for purposes of logrolling but for the purposes of bringing greater order and cohesion to the law or of coordinating an improvement of the law's substance.

*Id.* Only when there is no practical, rational or legitimate reason for combining provisions in one act will we find a one-subject-rule violation. *Id*.

{¶ 18} Application of the one-subject rule is more difficult when the challenged provision is part of an appropriations bill. *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 30. Biennial appropriations bills, which fund the state's programs and departments, necessarily address wide-ranging topics and bring unique challenges for judicial review. *Id.* Appropriations bills can bind many topics to the common thread of appropriations, *id.,* but they also can attract the attachment of riders because of their size and because they are certain to pass in some form. *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 16, 711 N.E.2d 203 (1999).

{¶ 19} OCSEA challenges H.B. 153 on one-subject grounds in two respects—as to the entire bill and, alternatively, as to the prison-privatization provisions. We reject both challenges.

i. OCSEA's whole-bill challenge

{¶ 20} The Tenth District held that by simply alleging that the several listed provisions of H.B. 153 are unrelated to appropriations, OCSEA's amended complaint sufficiently alleged a one-subject challenge to H.B. 153 in its entirety. 2013-Ohio-4505, 2 N.E.3d 304, ¶ 23. It ordered the trial court to hold an evidentiary hearing on remand "to determine whether the bill in question had only one subject" and, if not, to sever any offending provisions. *Id.* at ¶ 24. The enormity, if not the impossibility, of that undertaking—a section-by-section review of thousands of pages concerning every state agency and program, followed by an evidentiary hearing on the tedious task of budgeting—suggests the outcome here.

{¶ 21} OCSEA's conclusory allegation that 28 provisions of H.B. 153 stray from the subject of appropriations does not state a one-subject-rule claim regarding H.B. 153 in its entirety. First, it is not an allegation of fact that a court must accept

as true for purposes of Civ.R. 12(B)(6). *See Mitchell*, 40 Ohio St.3d at 193, 532 N.E.2d 753 (trial court need not accept as true unsupported conclusions in a complaint). Rather, identification of a bill's subject is a question of law, which depends "upon the particular language and subject matter of the proposal." *Dix*, 11 Ohio St.3d at 145, 464 N.E.2d 153. No fact-finding is necessary.

{¶ 22} Second, the appropriate remedy when a legislative act violates the one-subject rule is generally to sever the offending portions of the act "to cure the defect and save the portions" of the act that do relate to a single subject. *Hinkle*, 62 Ohio St.3d at 149, 580 N.E.2d 767. When an act contains more than one subject, the court may determine which subject is primary and which is an unrelated add-on. *Sheward*, 86 Ohio St.3d at 500, 715 N.E.2d 1062. As we discuss below, only in the rare instance when we have been unable to discern a primary subject have we resorted to invalidating an entire bill. That is not the case here.

{¶ 23} We can easily discern the primary subject of H.B. 153: balancing state expenditures against state revenues to ensure continued operation of state programs. Twice before, we have refused to find one-subject violations where the provisions of an appropriations bill "relate[] to funding the operations of programs, agencies, and matters described elsewhere in the bill." *ComTech Sys., Inc. v. Limbach*, 59 Ohio St.3d 96, 99, 570 N.E.2d 1089 (1991), citing *Dix*. Like the bills challenged in *ComTech Sys.* and *Dix*, H.B. 153 is an appropriations bill that deals with the operations of the state government. Because we can ascertain the primary subject of H.B. 153, OCSEA's whole-bill challenge fails to state a claim on which relief can be granted. Nor is there any other set of facts under which OCSEA could recover on this challenge. *O'Brien,* 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus. Thus, the trial court correctly dismissed the whole-bill portion of OCSEA's complaint.

{¶ 24} Our opinion in *Sheward* does not require a different result. In *Sheward*, we were unable to "carve out a primary subject by identifying and

assembling what we believe to be key or core provisions of" the bill at issue. *Id.* at 500. We noted that the bill combined "the wearing of seat belts with employment discrimination claims, class actions arising from the sale of securities with limitations on agency liability in actions against a hospital, recall notification with qualified immunity for athletic coaches, actions by a roller skater with supporting affidavits in a medical claim" all under the purported subject of " 'tort and other civil actions.' " *Id.* at 499. We held the bill to be unconstitutional in its entirety only because severability was not an option. *Id.* at 501. Having easily determined the primary subject of H.B. 153, however, we need not consider that harsh result here. Accordingly, we reverse the portion of the Tenth District's judgment regarding OCSEA's whole-bill challenge and its remand for an evidentiary hearing.

{¶ 25} We turn now to OCSEA's specific challenge to H.B. 153's prison-privatization provisions to determine whether we should sever them from the bill.

ii. OCSEA's alternative challenge to the prison-privatization provisions

{¶ 26} In its amended complaint, OCSEA alleges that the prison-privatization provisions in R.C. 9.06 and section 753.10 of H.B. 153 violate the one-subject rule and should be severed. Because the prison-privatization provisions relate to the overall subject of state expenditures and revenues, we reject this claim.

{¶ 27} To reach this conclusion, we look, first, to the prison-privatization provisions themselves, keeping in mind the primary subject of H.B. 153—balancing state expenditures against state revenues to ensure continued operation of state programs.

{¶ 28} H.B. 153 maintained the provision for prison operation and management that allows private companies to contract with public entities to privately operate and manage state-owned prison facilities. R.C. 9.06(A)(1). The General Assembly initially authorized private contracts for prison operation and management in 1995 Am.Sub.H.B. No. 117, the budget bill for the biennium

10

beginning July 1, 1995. 146 Ohio Laws, Part I, 898. Since then, five biennial budget bills have included amendments to R.C. 9.06. *See* 1997 Am.Sub.H.B. No. 215 (147 Ohio Laws, Part I, 878); 1999 Am.Sub.H.B. No. 283 (148 Ohio Laws, Part II, 2339); 2001 Am.Sub.H.B. No. 94 (149 Ohio Laws, Part III, 4126); 2009 Am.Sub.H.B. No. 1; and H.B. 153.

{¶ 29} In order to enter into a contract with a public entity to operate and manage a state correctional institution, a private company is subject to a host of requirements. In particular, it must demonstrate that it will save the public entity 5 percent over the projected cost to the public entity of providing the statutorily required services. R.C. 9.06(A)(4). Thus, a public entity's authority to contract out the responsibility for operating and managing corrections facilities is conditioned upon an assurance of significant cost savings. A provision that saves the state 5 percent of the cost of operating a prison facility relates directly—not just rationally—to budgeting for the operations of the state government. Obviously, savings in this arena free up funds for other governmental purposes. *ComTech Sys.,* 59 Ohio St.3d at 99, 570 N.E.2d 1089 (appropriations bill may contain a new object of taxation to fund government operations described elsewhere in the bill).

{¶ 30} Beyond cost savings, the criteria and requirements applicable to contractors ensure the continued operation of the corrections facilities. For example, a contractor must convincingly demonstrate that it can operate the facility with the inmate capacity required by the public entity and provide required services. R.C. 9.06(A)(4). It must also comply with DRC rules for the operation and management of corrections facilities. R.C. 9.06(B)(3). And contractors who have been approved to operate a facility under R.C. 9.06 must indemnify the state for specified claims and losses. R.C. 9.06(D). In these ways, the operation and management provisions of H.B. 153 and R.C. 9.06 relate directly to the funding of continued operation of state programs, and they do not violate the one-subject rule. *Dix*, 11 Ohio St.3d at 145, 464 N.E.2d 153.

**{¶ 31}** As an additional means of addressing budgetary concerns in H.B. 153, the General Assembly offered for sale five of Ohio's corrections facilities in connection with contracts for the operation and management of those facilities. H.B. 153, section 753.10(C)(1) and (2), (D)(1) and (2), (E)(1) and (2), (F)(1) and (2), and (G)(1) and (2). The sale provisions encompass the cost savings already noted and also provide for revenue generation. Proceeds from the prison sales must "be deposited into the state treasury to the credit of the Adult and Juvenile Correctional Facilities Bond Retirement Fund and shall be used to redeem or defease bonds in accordance with [R.C. 5120.092],[3] and any remaining moneys after such redemption or defeasance shall be transferred in accordance with that section to the General Revenue Fund." H.B. 153, section 753.10(C)(8), (D)(8), (E)(8), (F)(8), and (G)(8). Like the new tax enacted by the appropriations bill in *ComTech Sys.,* 59 Ohio St.3d at 99, 570 N.E.2d 1089, the prison sales authorized by H.B. 153 help to fund a program described elsewhere in the bill.

**{¶ 32}** Additionally, R.C. 9.06(J)(3) requires that any prison that is sold be returned to the county tax list and be subject to all real property taxes and assessments. The contractor's gross receipts and income derived from operating and managing the facility are subject to gross-receipts and income taxes levied by the state and its subdivisions. *Id.* Thus, a prison sale creates additional tax revenue for the state and its political subdivisions.

**{¶ 33}** In short, the prison-sale provisions are rationally related to budgeting for the operation of the state government. Like the tax in *ComTech Sys.,* the prison-sale provisions were intended to generate revenue. The General Assembly's decision to combine the prison-sale provisions with the other measures in H.B. 153 was reasonable.

---

[3] H.B. 153 also enacted R.C. 5120.092, which created the Adult and Juvenile Correctional Facilities Bond Retirement Fund.

**{¶ 34}** That conclusion is consistent with prior cases in which we have rejected one-subject challenges to appropriations bills. *See ComTech Sys.* (appropriations bill could levy new sales tax on automatic data processing and computer services that would fund other government operations described in the bill); *Dix*, 11 Ohio St.3d at 146, 464 N.E.2d 153 (no one-subject violation where challenged provision related to funding the operation of programs, agencies, and matters described elsewhere in the bill). The prison-privatization provisions in H.B. 153 provide for decreased expenditures by public entities and provide means for revenue generation that can fund the operation of other programs and matters described in the bill. For these reasons, we conclude that OCSEA's complaint failed to state a one-subject-rule claim on which relief could be granted. Nor is there a conceivable set of facts upon which OCSEA could recover. We accordingly reverse the Tenth District's contrary judgment.

**{¶ 35}** Having resolved the state respondents' propositions of law, we turn to the propositions of law OCSEA raises in its cross-appeal.

B. The Constitutional Prohibition against Joinder of Property Rights

**{¶ 36}** OCSEA's first proposition of law concerns an aspect of the state's sale of the Lake Erie facility to Corrections Corporation in 2011. OCSEA challenges the state's agreement in its contract to pay a $3.8 million annual ownership fee ("fee") to Corrections Corporation. OCSEA characterizes the fee as a subsidy that compensates Corrections Corporation for its ownership expenses, and it argues that the fee violates Article VIII, Section 4 of the Ohio Constitution, which prohibits the joinder of public and private property rights. The state respondents conversely characterize the fee as akin to a lease payment that allows the state exclusive access to house prisoners at Lake Erie Correctional Facility.

**{¶ 37}** Article VIII, Section 4 of the Ohio Constitution includes two prohibitions. It prohibits the state from giving or lending its credit to any individual

association or corporation, and it prohibits the state from becoming a joint owner of a private business or association:

> The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever; nor shall the state ever hereafter become a joint owner, or stockholder, in any company or association, in this state, or elsewhere, formed for any purpose whatever.

Article VIII, Section 4 neither prohibits the state from selling its property to private persons nor prohibits the state from contracting with private entities for services. *See State ex rel. Campbell v. Cincinnati St. Ry. Co.*, 97 Ohio St. 283, 310, 119 N.E. 735 (1918) (city had right to contract with railway company for operation of railroad); *Cincinnati v. Dexter*, 55 Ohio St. 93, 110, 44 N.E. 520 (1896) (good-faith sale for fair value cannot be characterized as a loan of the government's credit); *Grendell v. Ohio Environmental Protection Agency*, 146 Ohio App.3d 1, 7–8, 764 N.E2d 1067 (9th Dist.2001) (the analysis used for cities under Article VIII, Section 6 has been applied to cases challenging the state's actions under Section 4). Both the trial court and the court of appeals held that OCSEA failed to state a claim for a violation of Article VIII, Section 4. We agree.

{¶ 38} Our disposition of this issue turns on technical pleading requirements and OCSEA's related tactical choices in the courts below. In its amended complaint, OCSEA broadly alleged that the contract for the sale of Lake Erie Correctional Facility made the state "a joint owner, created an 'individual association' and/or mixed [the state's] property rights with the rights of [Corrections Corporation] to such an extent that the result violates the prohibition in Section 4, Article VIII of the Ohio Constitution." OCSEA's proposition of law

14

in this court, however, whittles its Article VIII, Section 4 claim down to just one argument—that the fee amounts to a prohibited subsidy.

{¶ 39} Exhibit 1 to the amended complaint includes a copy of a document entitled "Attachment Seven Cost Summary Form," which OCSEA alleged is part of the contract with Corrections Corporation. The cost summary includes in its "Description of Cost" an "Annual Ownership Fee (AOF) per Contract requirements, in annual dollars: $3,800,000.00." But the bald assertion that the fee—not described in greater detail elsewhere in the complaint—amounts to an unconstitutional subsidy is an unsupported legal conclusion not entitled to a presumption of truth. *See Mitchell*, 40 Ohio St.3d at 193, 532 N.E.2d 753 (unsupported legal conclusions are not entitled to presumption of truth and are insufficient to withstand motion to dismiss).

{¶ 40} The absence of information in the record regarding the fee stems from OCSEA's own litigation strategy. It elected not to attach to its amended complaint a copy of the contract governing Corrections Corporation's purchase and subsequent operation and management of Lake Erie Correctional Facility or the request for proposal that was incorporated into the contract. And OCSEA objected when Corrections Corporation attempted to supplement the record in the Tenth District with parts of those documents because they were not part of the record in the trial court. *See Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13 ("a bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial"). OCSEA's decision not to attach the contract to its amended complaint precluded both the trial court and the Tenth District from considering the provisions of that contract, including provisions regarding the fee. OCSEA cannot now profit from a hole it left—and fought to maintain—in the record. Although Corrections Corporation and OCSEA cite the materials that Corrections Corporation unsuccessfully attempted to introduce at the court of appeals, we may not consider materials that

were not before the trial court and that the Tenth District explicitly declined to consider. *Id.* at ¶ 13; 2013-Ohio-4505, 2 N.E.3d 304, at ¶ 50.

{¶ 41} In an effort to save its claim that the fee is unconstitutional, OCSEA argues that record evidence is *always* required to evaluate an as-applied constitutional challenge. In support, OCSEA cites the same cases it relied on in the Tenth District: *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 55 N.E.2d 629 (1944), paragraphs four and six of the syllabus; and *Cleveland Gear Co. v. Limbach*, 35 Ohio St.3d 229, 232, 520 N.E.2d 188 (1988). Those precedents support the assertion that the *merits* of an as-applied challenge can only be disposed of with evidence. We reject, however, OCSEA's implicit contention that no as-applied challenge is ever subject to dismissal for failure to state a claim upon which relief can be granted. With respect to its claim here, the amended complaint alleges only the bare legal conclusion that the fee constitutes a subsidy that violates Article VIII, Section 4. OCSEA failed to allege facts necessary to flesh out the circumstances that it claims created a constitutional violation. *See Belden* at paragraph four of the syllabus ("A legislative act * * * may be valid upon its face but unconstitutional because of its operative effect upon *a particular state of facts*" [emphasis added]).

{¶ 42} In its brief, OCSEA claims that "[t]he State has promised to pay [Corrections Corporation] more in [fee] payments ($3,800,000/yr x 21years = $79,800,000) than [Corrections Corporation] paid for the prison ($72,770,260)." That claim is legally and factually untenable on the record before us. It is factually untenable because the document that OCSEA claims sets the fee as $3.8 million a year limits the payment of the fee to the time from August 31, 2011, to June 30, 2013. And OCSEA's $79,800,000 figure is legally untenable because the legislature is bound by a constitutional provision commanding that "no appropriation shall be made for a longer period than two years." Article II, Section 22, Ohio Constitution.

16

**{¶ 43}** The amended complaint contains no allegations of fact that, even if presumed to be true, support the conclusion that the fee is a subsidy or that payment of the fee constitutes an as-applied violation of Article VIII, Section 4 of the Ohio Constitution. Even assuming the truth of the details of the fee alleged by OCSEA in this court, payment of the fee does not constitute a gift or loan of the state's credit, nor does it transform the state's interest into a co-ownership with Corrections Corporation. There is no set of facts under which OCSEA can prevail. *O'Brien*, 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus. Consequently, OCSEA failed to state a claim on which relief can be granted, and we affirm the Tenth District's judgment on this issue.

**{¶ 44}** We now turn to the final issue before us: did the court of common pleas lack jurisdiction to consider OCSEA's claim under R.C. 4117.01(C)?

C.  Common Pleas Jurisdiction over R.C. 4117.01(C) Claim

**{¶ 45}** OCSEA's second proposition of law challenges the Tenth District's holding that SERB has exclusive jurisdiction over OCSEA's alternative claim, premised on R.C. 4117.01(C). In its amended complaint, OCSEA alleges that employees of MTC and Corrections Corporation working at North Central Correctional Complex and Lake Erie Correctional Facility are "public employees" as defined in R.C. 4117.01(C). It requests a declaration of public-employee status, however, only as to employees at North Central Correctional Complex. OCSEA argues that the trial court has jurisdiction to determine its R.C. 4117.01(C) claim because R.C. 9.06(K) vests the Franklin County Court of Common Pleas with exclusive jurisdiction over all challenges to R.C. 9.06 and section 753.10 of H.B. 153. OCSEA further argues that *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991), relied on by the trial court and the court of appeals, does not preclude the court's exercise of jurisdiction over this claim.

{¶ 46} In its brief, OCSEA broadly argues that employees who work in prisons operated by private contractors pursuant to contract with the state are public employees. But in determining the jurisdictional question presented, we first examine the specific declaratory-judgment claim that OCSEA pled in its amended complaint. In the event that its constitutional challenges do not succeed, OCSEA requested a declaration that "individuals currently working in North Central Correctional Complex are public employees as defined in R.C. 4117.01(C)." The declaratory-judgment claim starts from the premise that this court finds R.C. 9.06 and section 753.10 of H.B. 153 constitutional and that the contracts with MTC and Corrections Corporation will remain in effect. OCSEA argues that individuals who work at the privatized prisons retain public-employee status because the state maintains extensive and ultimate jurisdiction and control over all major or important aspects of the operation and management of the facilities.

{¶ 47} The alleged impact on and harm to the plaintiffs from the privatization of the North Central Correctional Complex and the Lake Erie Correctional Facility inform the nature of OCSEA's declaratory-judgment claim. The amended complaint alleged that the union lost approximately 273 members, along with the dues and fair-share fee payments that they would have been required to contribute, for an annual loss of at least $145,000. It also alleged that the individual employee-plaintiffs who lost their jobs were wrongfully excluded from their employment and incurred losses as a result. Although most of the individual employee-plaintiffs transferred to new positions in other state facilities, those positions were often located at longer distances from their homes, and they lost institutional seniority under the collective bargaining agreement ("CBA"). The loss of seniority affected employees' jobs, days off, hours, and shifts. Several individuals alleged that they transferred to other state institutions rather than seeking or accepting employment with MTC or Corrections Corporation so that they could continue participation in the Ohio Public Employees Retirement System

without also having to contribute to social security. Of all the employees named in the complaint, only one ended up working for MTC. As a result, she was no longer classified as a public employee and lost her accumulated sick leave, her right to continued participation in the State Teachers Retirement System, and the job security provided by the CBA.

{¶ 48} OCSEA's amended complaint first requested a declaration that "individuals currently working in North Central Correctional Complex are public employees as defined in R.C. 4117.01(C)," but a later paragraph in the same pleading requested a seemingly broader declaration that "all individuals working in the North [Central] Correctional Complex after R.C. 9.06 and/or [section 753.10 of H.B. 153] were implemented are public employees as defined in R.C. 4117.01(C) *and [that] they are entitled to all the benefits and emoluments applicable to public employees by CBA and by law*." (Emphasis added.) It is unclear from the amended complaint whether OCSEA seeks a separate declaration that employees of North Central Correctional Complex are entitled to specific rights and benefits under the CBA or whether it continues to seek only a declaration that those employees are "public employees" entitled to whatever rights flow from that classification. In this court, OCSEA explains that it seeks the latter: "Once Plaintiffs are determined by a Court to be public employees as defined in R.C. 4117.01(C), the CBA between OCSEA and the State contains their rights and the employer's responsibilities and applies just as it had before the two prisons were privatized." We therefore consider only whether the trial court has jurisdiction to determine via declaratory judgment whether employees working in Ohio prisons operated by private contractors pursuant to contract with the state are public employees under R.C. 4117.01(C). If not, the trial court correctly dismissed this portion of the complaint under Civ.R. 12(B)(1).

{¶ 49} We first reject OCSEA's reliance on R.C. 9.06(K) to establish the trial court's jurisdiction. R.C. 9.06(K) states that any claim alleging that R.C. 9.06

or section 753.10 of H.B. 153 violates a provision of the Ohio Constitution or the Revised Code or that any action taken by the governor, DAS or DRC pursuant to those sections violates the Ohio Constitution or the Revised Code must be brought in the Franklin County Court of Common Pleas. OCSEA's declaratory-judgment claim does not allege that R.C. 9.06 or section 753.10 of H.B. 153, or any action taken pursuant to either of those sections, violated the Ohio Constitution or the Revised Code. To the contrary, the declaratory-judgment claim is an *alternative* to OCSEA's constitutional claims and proceeds from the premise that the contracts executed pursuant to R.C. 9.06 and section 753.10 of H.B. 153 remain in effect. OCSEA's declaratory-judgment claim rests on the assertion that DAS and DRC violated R.C. 4117.01(C) by failing to acknowledge employees of MTC and Corrections Corporation as public employees. The challenge to the employees' status as public or private employees does not challenge action taken under R.C. 9.06 or section 753.10 of H.B. 153, and it does not fall within the scope of R.C. 9.06(K).

{¶ 50} OCSEA's remaining argument in support of the trial court's jurisdiction challenges the Tenth District's reliance on *Franklin Cty. Law Enforcement Assn.*, 59 Ohio St.3d at 169, 572 N.E.2d 87. OCSEA argues that courts, including the Tenth District here, have read *Franklin Cty. Law Enforcement Assn.* too broadly to afford SERB greater exclusive jurisdiction than the General Assembly has prescribed by statute.

{¶ 51} SERB is a state agency created by R.C. Chapter 4117. R.C. 4117.02(A); *State ex rel. Brecksville Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 74 Ohio St.3d 665, 666, 660 N.E.2d 1199 (1996). As a state agency and a creature of statute, SERB is limited to the powers and jurisdiction conferred on it by statute. *See Penn Cent. Transp. Co. v. Pub. Util. Comm.*, 35 Ohio St.2d 97, 298 N.E.2d 587 (1973), paragraph one of the syllabus; *Morgan Cty. Budget Comm. v. Bd. of Tax Appeals*, 175 Ohio St. 225, 193 N.E.2d 145 (1963), paragraph three of

the syllabus. OCSEA and its amici argue that R.C. Chapter 4117 confers jurisdiction upon SERB only over certain aspects of public employer-employee relations. The state respondents counter that SERB has exclusive jurisdiction over all matters within R.C. Chapter 4117, citing *State ex rel. Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88, ¶ 20, and *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 156 Ohio App.3d 368, 2004-Ohio-994, 806 N.E.2d 170, ¶ 12 (8th Dist.). We agree with OCSEA.

{¶ 52} When the General Assembly intends to vest an administrative agency with exclusive jurisdiction, it does so by appropriate statutory language. *State ex rel. Banc One Corp. v. Walker*, 86 Ohio St.3d 169, 171-172, 712 N.E.2d 742 (1999). Nowhere in R.C. Chapter 4117 does the General Assembly assign SERB exclusive jurisdiction over all issues touching on that chapter's provisions. Instead, the General Assembly targeted specific issues for SERB to address in the first instance.

{¶ 53} Consistent with the general rule that agencies created by statute have such jurisdiction as the General Assembly confers, SERB "has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117." *Franklin Cty. Law Enforcement Assn.*, 59 Ohio St.3d 167, 572 N.E.2d 87, at paragraph one of the syllabus. As to matters involving claims that "arise from or depend on the collective bargaining rights created by R.C. Chapter 4117," that chapter's remedies are exclusive. *Id*. at paragraph two of the syllabus. In *Franklin Cty. Law Enforcement Assn.*, we concluded that SERB had exclusive jurisdiction over claims for injunctive relief regarding a tentative, partial settlement agreement between a public entity and a union. The claims there stemmed from the union's duty to fairly represent all members of the bargaining unit, the employees' right to vote on union representation, and the statutory requirement that a union provide for the rights of individual members to participate in the organization's affairs. *Id.* at

171. Thus, the claims stemmed directly from rights and remedies created by R.C. Chapter 4117. *Id.*

{¶ 54} The principles announced in *Franklin Cty. Law Enforcement Assn.* are not so broad as to place *all* claims that touch on R.C. Chapter 4117 within SERB's exclusive jurisdiction. Indeed, we expressly acknowledged in that case that a plaintiff may raise in the common pleas courts rights that exist independently of R.C. Chapter 4117, "even though they may touch on the collective bargaining relationships." *Id.* at 172. *See also E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.*, 70 Ohio St.3d 125, 128-129, 637 N.E.2d 878 (1994) (common pleas court had jurisdiction to review arbitration rulings that flowed from collective-bargaining agreements).

{¶ 55} The state respondents cite a more recent case—*Sutula,* 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88—for the proposition that SERB has broad exclusive jurisdiction over all matters within R.C. Chapter 4117. In *Sutula*, a union certified by SERB as the exclusive representative of a bargaining unit composed of a group of city employees filed a complaint for injunctive and declaratory relief regarding the city of Cleveland's duty to perform in accordance with its prestrike settlement offer, following two years of failed negotiations pursuant to R.C. 4117.14. In response, the city filed a complaint for a writ of prohibition in the Eighth District Court of Appeals. The controversy reached this court on a direct appeal from the Eighth District's dismissal of the prohibition action.

{¶ 56} The central question in *Sutula* was whether the trial court patently and unambiguously lacked jurisdiction over the union's action for injunctive and declaratory relief. *Id.* at ¶ 13-14. We reiterated that SERB " 'has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117' " and that the dispositive test for determining whether SERB has exclusive, original jurisdiction "is whether the claims 'arise from or depend on the collective

22

bargaining rights created by R.C. Chapter 4117.' " *Id.* at ¶ 16, 20, quoting *Franklin Cty. Law Enforcement Assn.*, 59 Ohio St.3d 167, 572 N.E.2d 87, at paragraphs one and two of the syllabus. We concluded that the trial court lacked jurisdiction because the union claimed that the city failed to abide by an agreement reached through collective-bargaining negotiations under R.C. Chapter 4117. *Sutula* at ¶ 17, 25. That holding is consistent with *Franklin Cty. Law Enforcement Assn.*

{¶ 57} In support of their position that SERB has exclusive jurisdiction over R.C. Chapter 4117 matters, the state respondents point to a single sentence in *Sutula*, which states that SERB's jurisdiction goes beyond unfair labor practices and includes " 'matters within R.C. Chapter 4117 in its entirety.' " *Id.* at ¶ 20, quoting *Assn. of Cleveland Fire Fighters*, 156 Ohio App.3d 368, 2004-Ohio-994, 806 N.E.2d 170, at ¶ 12. In *Assn. of Cleveland Fire Fighters*, the Eighth District extrapolated that view from *Franklin Cty. Law Enforcement Assn.*, at paragraph one of the syllabus, which states that SERB "has exclusive jurisdiction to decide matters *committed to it* pursuant to R.C. Chapter 4117." (Emphasis added.) The claim in *Assn. of Cleveland Fire Fighters* arose directly out of rights created by R.C. Chapter 4117; it involved an allegation that the city had unfairly eliminated assistant chiefs from the bargaining unit under R.C. 4117.06. *Assn. of Cleveland Fire Fighters* at ¶ 14 ("the improper removal of employees from a bargaining unit is enforceable against the employer as an unfair labor practice under R.C. 4117.11(A)(8) and 4117.11(B)(6)"). Likewise, the claims in *Sutula* arose directly out of rights created by R.C. Chapter 4117. As we stated twice in *Sutula,* the dispositive test remains whether the claims arise from or depend on collective-bargaining rights created by R.C. Chapter 4117. *Sutula* at ¶ 20, quoting *Franklin Cty. Law Enforcement Assn.* at paragraph two of the syllabus; *Sutula* at ¶ 22. *Sutula* does not expand the scope of SERB's jurisdiction beyond the matters conferred on it by R.C. Chapter 4117.

**{¶ 58}** The dispositive question here, therefore, is whether OCSEA's claim that individuals employed at North Central Correctional Complex are "public employees" under R.C. 4117.01(C) arises from or depends on collective-bargaining rights created by R.C. Chapter 4117. We conclude that it does.

**{¶ 59}** This court considered an issue regarding status as a public employer under R.C. 4117.01 in *Ohio Historical Soc. v. State Emp. Relations Bd.*, 48 Ohio St.3d 45, 549 N.E.2d 157 (1990) ("*Ohio Historical Soc. I*"), and *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 469, 613 N.E.2d 591 (1993) ("*Ohio Historical Soc. II*"). The *Ohio Historical Soc.* cases involved (1) an R.C. 119.12 appeal from SERB's determination that the historical society was not a public employer in proceedings initiated by a union for a representation election and (2) an appeal in a declaratory-judgment action that the historical society filed in the Franklin County Court of Common Pleas.

**{¶ 60}** In *Ohio Historical Soc. I*, we affirmed the Tenth District's determination that the trial court lacked jurisdiction over the R.C. 119.12 appeal because it was premature, and we noted that SERB did not appeal the Tenth District's holding that the trial court had jurisdiction over the declaratory-judgment action. *Id.* at 47 and 48. We stated in dicta that the historical society was "not precluded * * * from raising the issue as to whether it is a public employer in the declaratory judgment action." *Id*. at 48. But in *Ohio Historical Soc. II,* we directly confronted the question of the trial court's jurisdiction over the historical society's declaratory-judgment claim. The lead opinion held that the trial court lacked jurisdiction because the only substantive allegation—that the historical society was not a public employer—depended "entirely on the provisions of R.C. Chapter 4117, over which SERB has exclusive original jurisdiction." *Ohio Historical Soc. II* at 469. The portion of *Ohio Historical Soc. II* addressing the trial court's lack of jurisdiction did not garner the votes of a majority of this court, but it is consistent with *Franklin Cty. Law Enforcement Assn*.

**{¶ 61}** The plaintiffs in *Franklin Cty. Law Enforcement Assn.* argued that a tentative, partial settlement agreement was invalid under R.C. 325.17 because the agreement lacked the sheriff's approval and was, instead, approved by the county commissioners. 59 Ohio St.3d at 170, 572 N.E.2d 87. They further claimed that because R.C. 325.17 is a " 'nonbargaining' statute," they could pursue the enforcement of their rights without resorting to the remedies under R.C. Chapter 4117. *Id.* This court rejected the plaintiffs' attempt to avoid SERB's jurisdiction, stating that "R.C. Chapter 4117 controls in any event on the issue of who is the public employer." *Id*. "Ultimately, the question of who is the 'public employer' must be determined under R.C. Chapter 4117." *Id*.

**{¶ 62}** The determination whether employees working at North Central Corrections Complex are public employees, as defined in R.C. 4117.01(C), and are therefore entitled to the benefits and protections afforded to bargaining-unit members under the CBA depends "entirely on the provisions of R.C. Chapter 4117, over which SERB has exclusive original jurisdiction." *Ohio Historical Soc. II* at 469. Accordingly, the Tenth District properly affirmed the trial court's determination that it lacked jurisdiction over OCSEA's declaratory-judgment claim.

**{¶ 63}** To be clear, we do not suggest that SERB has exclusive, original jurisdiction over every claim touching upon R.C. Chapter 4117. Nor do we undertake to define the circumstances in which a common pleas court might have jurisdiction over claims touching upon R.C. Chapter 4117. Those questions are beyond the scope of OCSEA's claim, as pled in its amended complaint, and they simply are not before us at this time. We merely reiterate that "if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive." *Franklin Cty. Law Enforcement Assn.* at paragraph two of the syllabus. Applying that rule here,

we conclude that jurisdiction over OCSEA's claim regarding R.C. 4117.01(C) lies exclusively with SERB.

## *Conclusion*

**{¶ 64}** H.B. 153 does not violate the one-subject rule in its entirety. Nor do the prison-privatization provisions of that bill violate the one-subject rule. Accordingly, we reverse the Tenth District's judgment on those claims. Next, because the amended complaint's thinly pleaded allegations do not include sufficient facts to state a claim that the fee under the Corrections Corporation contract violates the constitutional ban on the joinder of public and private property rights in Article VIII, Section 4 of the Ohio Constitution, we affirm the Tenth District's judgment on that claim. Finally, we affirm the Tenth District's judgment that OCSEA's claim that employees working at North Central Corrections Complex are public employees under R.C. 4117.01(C) lies within SERB's exclusive jurisdiction. The cause is remanded to the trial court.

Judgment affirmed in part
and reversed in part,
and cause remanded.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.

O'NEILL and PFEIFER, JJ., dissent.

_____

**O'NEILL, J., dissenting.**

**{¶ 65}** I respectfully disagree with the conclusion reached by the majority regarding the jurisdiction of the common pleas court to decide whether the employees of the prison are public employees and therefore entitled to all of the rights and privileges afforded to public employees. The Franklin County Common Pleas Court has jurisdiction to decide whether employees of private companies that operate prisons pursuant to contract with the state are public employees as defined under R.C. 4117.01(C).

26

**{¶ 66}** The majority's opinion gives the State Employment Relations Board ("SERB") greater exclusive jurisdiction than prescribed by statute. R.C. Chapter 4117 confers jurisdiction on SERB only over certain aspects of public employer-employee interactions. As the majority correctly noted, citing *State ex rel. Banc One Corp. v. Walker*, 86 Ohio St.3d 169, 171-172, 712 N.E.2d 742 (1999), when the General Assembly intends to vest exclusive jurisdiction in an agency, it provides it by appropriate statutory language. However, nowhere in R.C. Chapter 4117 does the General Assembly assign to SERB *exclusive* jurisdiction over all issues touching on the chapter's provisions. This is evident from the language the General Assembly chose in describing SERB's jurisdiction over various issues. Instead of a broad grant of jurisdiction, the General Assembly targeted specific issues for SERB to address in the first instance. By way of example only, SERB has initial jurisdiction to certify the exclusive representative of a bargaining unit's members, R.C. 4117.05(A)(1); SERB alone defines the unit appropriate for collective-bargaining purposes, R.C. 4117.06(A); SERB has exclusive jurisdiction over unfair labor practices (violations of R.C. 4117.11), R.C. 4117.12; and SERB first determines whether an employer-challenged strike is authorized under R.C. Chapter 4117, R.C. 4117.23.

**{¶ 67}** While the majority relies on this court's decision in *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991), for the proposition that who is a "public employer" is a question that must be determined under R.C. Chapter 4117, we acknowledged that a plaintiff may raise rights that exist independently of R.C. Chapter 4117, like constitutional rights, in common pleas courts. This is true "even though they may touch on the collective bargaining relationships between employer, employee, and union." *Id.* at 172. In the second paragraph of the syllabus, this court held, "If a party asserts rights that are independent of R.C. Chapter 4117, the party's complaint may properly be heard in common pleas court.

However, if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive." Declaratory judgments regarding a party's status under the definitions in R.C. 4117.01 do not necessarily rely on the rights and remedies created by other subsections of R.C. Chapter 4117.

{¶ 68} Under the circumstances presented in this case, a declaratory-judgment action is an appropriate vehicle to determine whether the employees of Management & Training Corporation and Corrections Corporation of America are public employees as defined in R.C. 4117.01(C). Indeed, when the answer to a simple and direct question will resolve a controversy, a declaratory judgment may well be preferable to a full administrative proceeding. This question could not be more direct: are the employees of Management & Training and Corrections Corporation public employees? Yes or no?

{¶ 69} And the use of a declaratory-judgment action in cases like this is consistent with our authority and precedent. We have held that a declaratory judgment is not appropriate where another equally serviceable remedy is available. *Swander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.*, 51 Ohio St.3d 131, 135, 554 N.E.2d 1324 (1990). But an administrative remedy is not as serviceable as a declaratory judgment where administrative practice would involve substantial expense that the declaratory-judgment action would not. *Burt Realty Corp. v. Columbus*, 21 Ohio St.2d 265, 257 N.E.2d 355 (1970), paragraph one of the syllabus. This is such a case.

{¶ 70} Here, a statewide union, Ohio Civil Service Employees Association ("OCSEA"), is already in place. OCSEA claims that after their status is determined, Management & Training and Corrections Corporation's employees either will or will not be entitled to representation by OCSEA and the benefits of the applicable collective-bargaining agreement. On these bases, OCSEA contends that a declaration that the prison employees either are or are not public employees

28

will resolve the claim in its entirety. Under these circumstances, the Franklin County Court of Common Pleas has jurisdiction to hear OCSEA's declaratory-judgment action to determine whether the individuals employed by Management & Training and Corrections Corporation are public employees as defined by R.C. 4117.01(C).

{¶ 71} Accordingly, I must dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

James E. Melle, for appellees and cross-appellants, Ohio Civil Service Employees Association, David Combs, Clair Crawford, Lori Leach Douce, Margo Hall, Sheila Herron, Daniel Karcher, Rebecca Sayers, Angela Schuster, Troy Tackett, Kathy Tinker, Lisa Zimmerman, and ProgressOhio.org.

Taft Stettinius & Hollister, L.L.P., Charles R. Saxbe, James D. Abrams, and Celia M. Kilgard, for appellees Corrections Corporation of America and CCA Western Properties, Inc.

Michael DeWine, Ohio Attorney General, and Eric E. Murphy, State Solicitor, for appellants and cross-appellees state of Ohio, Governor John R. Kasich, Attorney General Michael DeWine, Secretary of State Jon Husted, Auditor of State David Yost, Ohio Department of Rehabilitation and Correction and its director, Gary C. Mohr, Ohio Department of Administrative Services and its director, Robert Blair, Treasurer Josh Mandel, and the Office of Budget and Management and its director, Timothy S. Keen.

Sutter O'Connell, Adam Martin, and Kevin W. Kita, for appellant and cross-appellee Management & Training Corporation.

American Federation of State, County and Municipal Employees, AFL-CIO, and Nicholas A. Serrano, urging affirmance in part and reversal in part for amicus curiae AFSCME International.

Buckley King, L.P.A., Robert J. Walter, Thomas I. Blackburn, and Diem N. Kaelber, urging affirmance in part and reversal in part for amici curiae Ohio Association of Public School Employees/AFSCME Local 4, AFL-CIO, Fraternal Order of Police of Ohio, Inc., and American Federation of State, County, and Municipal Employees Ohio Council 8.

_____