[Cite as *Mason v. Mason*, 2024-Ohio-5950.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| MICHELL L. MASON | : | |
| Appellee | : | C.A. No. 30216 |
| v. | : | Trial Court Case No. 2022 DR 840 |
| JAMES C. MASON | : | (Appeal from Common Pleas Court-Domestic Relations) |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 20, 2024

. . . . . . . . . . .

THOMAS J. MANNING, Attorney for Appellant

JAMIE L. ANDERSON, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant James C. Mason[1] appeals from a final judgment and decree of divorce entered by the Montgomery County Court of Common Pleas, Domestic

---

[1] For ease of reference, we will refer to the parties by their given names. James Mason uses his middle name, Clyde, rather than his first name.

Relations Deivision.   Specifically, he claims the court erred by finding it lacked jurisdiction over his claim against property owned by a third party.   For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Michell and Clyde Mason were married in 1999.   Michell filed a complaint for divorce in November 2022.   In May 2023, Clyde filed a Civ.R. 75(B)(1) motion to add Michell's father, Steven Pennington, as a party-defendant.   In the motion, Clyde alleged that he and Michell had resided in a home on Rohrer Boulevard in Riverside for "several years prior to their separation."   Clyde admitted that Pennington was the "titled owner of the property" but alleged that he and Michell had "made substantial improvements to the Rohrer property at their cost."   The trial court permitted the joinder of Pennington, and the parties subsequently agreed to join Pennington's wife as a party-defendant as well, because she was also a titled owner of the residence.

{¶ 3} Clyde deposed Steven Pennington in July 2023.   According to Pennington, he and his wife had purchased the subject property at a foreclosure sale with the intent to permit their daughter, Michell, to reside in the home until she "got back on her feet." At the time of the purchase, Michell and Clyde were separated and living apart. Pennington testified that he and his wife expected Michell to eventually purchase the home, but they intended to resell the property if Michell did not buy it from them. Pennington testified that he had made substantial improvements to the home.   At some point, Michell and Clyde reconciled, and Clyde moved into the home.   Pennington

testified that he had not required Michell and Clyde to make any improvements to the home and had not authorized any of the improvements for which Clyde claimed he and Michell expended monies.

{¶ 4} Thereafter, the Penningtons filed a Civ.R. 12(B)(1) motion to dismiss them as parties for lack of subject matter jurisdiction. The court granted the motion, finding that the "property remains titled in the name of the Penningtons; there has been no evidence that the Plaintiff nor the Defendant paid the [Penningtons] for the Real Estate, and nothing to suggest that the real estate was gifted to both Plaintiff and Defendant." As such, the domestic relations court concluded that it lacked jurisdiction to address the real estate. The divorce proceeded, and a final judgment and decree of divorce was entered.

{¶ 5} Clyde appeals.

## II. Civ.R. 12(B)(1)

{¶ 6} Civ.R. 12(B)(1) permits parties to seek dismissal for "lack of jurisdiction over the subject matter." " 'Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits.' " *State ex rel. Ohio Democratic Party v. Blackwell*, 2006-Ohio-5202, ¶ 8, quoting *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972), paragraph one of the syllabus. "The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80 (1989), citing *Avco Fin. Servs. Loan, Inc. v. Hale*, 36 Ohio App.3d 65, 67 (10th Dist.1987). When deciding a Civ.R. 12(B)(1)

motion, a court may "consider outside matter attached to a motion to dismiss for lack of jurisdiction without converting it into a motion for summary judgment if such material is pertinent to that inquiry." *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.*, 48 Ohio St.2d 211, 214 (1976).

{¶ 7} Appellate courts conduct a de novo review of Civ.R. 12(B)(1) dismissals. *Cook v. Pitter Patter Learning Ctr., LLC*, 2022-Ohio-961, ¶ 17 (2d Dist.), citing *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State of Ohio*, 2016-Ohio-478, ¶ 12. "This means we apply the same standards as the trial court." *Id.*, citing *Carter v. Trotwood-Madison City Bd. of Edn.*, 2009-Ohio-1769, ¶ 26 (2d Dist.).

### III. Trial Court's Subject Matter Jurisdiction
### Over Claim Against the Penningtons

{¶ 8} The first and second assignments of error asserted by Clyde state as follows:

THE TRIAL COURT ERRED BY HOLDING THAT IT DID NOT HAVE SUBJECT MATTER JURISDICTION TO ADJUDICATE AN EQUITABLE MARITAL PROPERTY CLAIM CONCERNING REAL ESTATE THAT WAS TITLED IN THE NAME OF APPELLEE'S PARENTS.

THE TRIAL COURT ERRED BY HOLDING THAT APPELLEE'S PARENTS SHOULD NOT HAVE BEEN JOINED AS DEFENDANTS IN THE PARTIES' DIVORCE CASE PURSUANT TO CIV. 75(B)(1).

{¶ 9} Clyde contends the trial court erred when it dismissed his claim against the Penningtons and that it also incorrectly determined that joinder was improper.

Conversely, the Penningtons argue that the domestic relations court had no jurisdiction over them or their property.

{¶ 10} "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case[.]" *Ostanek v. Ostanek*, 2021-Ohio-2319, ¶ 21, quoting *Corder v. Ohio Edison Co.*, 2020-Ohio-5220, ¶ 14. "[T]he focus is on whether the forum itself is competent to hear the controversy." *Id.*, citing *Corder*, quoting *State v. Harper*, 2020-Ohio-2913, ¶ 23. "The General Assembly has granted the common pleas courts, and where applicable, their domestic-relations divisions, subject-matter jurisdiction over divorce actions, R.C. 3105.17, and the division of marital property, R.C. 3105.171." *Ostanek* at ¶ 27.

{¶ 11} "Marital property" is defined in relevant part as "all interest that either or both of the spouses currently has in any real or personal property . . . that was acquired by either or both of the spouses during the marriage[.]" R.C. 3105.171(A)(3)(a)(ii). "An 'interest' is any right in the nature of property, but less than title." *Alimonos v. Alimonos*, 1996 WL 535289, *2 (2d Dist. Aug. 23, 1996). "Therefore, marital property subject to division and distribution in an action for divorce may include an interest in real property to which neither spouse holds the title, so long as one of them, or both of them, acquired that interest during the marriage." *Id.*

{¶ 12} Clyde contends that he has an equitable interest in the Penningtons' residential property by virtue of having "made considerable improvements to the property" which "substantially increased" the value of the property and by virtue of making "payments towards the taxes, insurance, and utilities for the property." Clyde cites

*Alimonos* as support for his claim that the monies expended on the Pennington real estate constituted marital property pursuant to R.C. 3105.171(A)(3)(a)(ii). Thus, he argues that that the domestic relations court erred in finding it lacked subject matter jurisdiction over his claim.

{¶ 13} The cases Clyde cites are distinguishable from the facts herein. For example, in *Alimonos*, the evidence established that a house titled solely in the name of the husband's parents was originally purchased with marital money as well as monies provided by the parents. Thus, the house was considered a marital asset. In another case, insurance policies held by a third-party trust were considered marital property because the policies had been purchased with marital monies. *Kim v. Kim*, 2020-Ohio-22 (9th Dist.). In *Neeley v. Neeley*, 1998 WL 639288 (2d Dist. Aug. 28, 1998), the husband gave his brother marital monies to purchase a car; the brother bought a car solely with the monies provided by husband, but only brother's name was placed on the title. *Id.* at *4. During the divorce proceedings, husband admitted that he and his brother were joint owners of the car. The court classified the car as a marital asset. *Id.*

{¶ 14} We need not discuss every case cited by Clyde as they, like *Alimonos* and *Kim*, all have one factual similarity: the assets at issue were originally purchased either wholly or partially with marital monies. Here, the record established that the real estate was purchased solely by the Penningtons; the Masons did not expend any marital monies or other assets toward the purchase.

{¶ 15} We do note Clyde has cited one case in which marital monies expended on improvements to a house owned by a third-party were classified as an equitable interest

in the residence. In *Steward v. Steward*, 2002-Ohio-3700 (6th Dist.), the parties occupied a home that belonged to the husband's father. *Id.* at ¶ 32. The parties intended to purchase the home from the father but were unable to obtain a mortgage loan. *Id.* Therefore, "in exchange for 'rent' or mortgage payments, the parties expended $35,000 in improvements on the property. *Id.* Eventually, husband's brother "purchased and obtained a mortgage on the property to circumvent [husband's] credit problems and tax liabilities with the IRS." *Id.* After the divorce was initiated, husband continued to live in the house with his girlfriend. *Id.* The court awarded "any interest in the property" to husband but credited the $35,000 expenditure as an equitable interest in the home. *Id.*

{¶ 16} The facts in *Steward* are not entirely clear. However, it is clear that the court concluded the monies expended by the parties constituted mortgage payments toward the purchase of the home, thereby entitling wife to reimbursement for a portion of those payments. Here, there was no evidence to support a finding that the monies expended on the Pennington property constituted mortgage payments or even rent. Instead, the record demonstrates that the improvements made by the Masons were not approved or requested by the Penningtons.

{¶ 17} We conclude that the domestic relations court in this case properly permitted joinder of the Penningtons when Clyde first requested it. However, after considering the pleadings and the evidence submitted by Clyde, the trial court determined that it lacked subject matter jurisdiction to adjudicate Clyde's claim against the Penningtons. This was not error.

{¶ 18} Civ.R. 75(B)(1) permits joinder, as a party defendant, of persons "having possession of, control of, or claiming an interest in property, whether real, personal, or mixed, out of which a party seeks a division of marital property, a distributive award, or an award of spousal support or other support[.]" Here, Clyde did not seek a division of marital property, a distributive award, or a support award from the Pennington residence. Instead, as stated during oral argument, Clyde sought reimbursement from the Penningtons for his share of the monies allegedly expended in improving the residence. This is no different than a tenant making a claim against an unrelated landlord for improvements made by the tenant to rental property.

{¶ 19} The domestic relations court's subject matter jurisdiction is limited to the division and distribution of marital property. Under the facts of this case, the Rohrer Boulevard real estate was not a marital asset. As such, the domestic relations court correctly concluded that it did not have subject matter jurisdiction to adjudicate Clyde's claim against the Penningtons. This result could have been different if the record supported a conclusion that 1) marital funds had been used to acquire the property or 2) there had been some agreement between Michell and her parents that, by virtue of the expenditure of marital funds, she would receive an ownership interest in the real estate.

{¶ 20} The domestic relations court did not err in finding it lacked subject matter jurisdiction over Clyde's claims against the Pennington property. Thus, the court did not err in dismissing the action against them.

{¶ 21} Accordingly, both assignments of error are overruled.

## IV. Conclusion

**{¶ 22}** The judgment of the domestic relations court is affirmed.

. . . . . . . . . . . . .


LEWIS, J. and HUFFMAN, J., concur.