[Cite as *Alexander Local School Dist. Bd. of Edn. v. Albany*, 2017-Ohio-8704.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

ALEXANDER LOCAL SCHOOL : 
 DISTRICT BOARD OF EDUCATION,
: 

    Plaintiff-Appellant,    Case No.  16CA19
: 

    vs.
: 

VILLAGE OF ALBANY, OHIO           DECISION AND JUDGMENT ENTRY
: 

    Defendant-Appellee.
: 

_____

APPEARANCES:

Christopher L. McCloskey, Tarik Kershah, and Desmond J. Cullimore, Columbus, Ohio, for Appellant.

Lawrence E. Barbiere, Mason, Ohio, Robert R. Rittenhouse, Athens, Ohio, and Scott Robe, Athens, Ohio, for Appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:11-16-17
PER CURIAM.

{¶ 1} This is an appeal from an Athens County Common Pleas Court judgment that dismissed the complaint filed by Alexander Local School District Board of Education, plaintiff below and appellant herein, against the Village of Albany, Ohio, defendant below and appellee herein. Appellant assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED IN DETERMINING THAT THE PHRASE 'NEW SCHOOL FACILITY' WAS NOT AMBIGUOUS AND OPEN TO OTHER REASONABLE

INTERPRETATIONS."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DETERMINING THAT THE
SCHOOL BOARD'S AMENDED COMPLAINT DID NOT
ASSERT SUFFICIENT FACTS TO STATE ANY CAUSE OF
ACTION."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ITS RELIANCE ON *SLIFE V.
KUNDTZ PROPERTIES, INC.* TO SUPPORT ITS GRANT OF
THE VILLAGE'S MOTION TO DISMISS."

{¶ 2} This appeal arises out of appellant's 2015 application to connect its newly-designed Wellness Center to appellee's sewer system. According to the complaint, in 2015 appellee denied appellant's application to connect its newly-designed Wellness Center to appellee's sewer system. Appellee asserted that a 2010 village ordinance prohibited the issuance of sewer taps outside the village unless the property served by the tap is annexed into the village. The village mayor drafted a letter to inform appellant that appellee "will not accept the application for the tap at the Wellness Center as you * * * have been told many [sic] the District must annex into the village before any tap will be approved. You have been provided with a copy of the ordinance that pertains to this. The village will not accept the application or its fee until the District annexs [sic] into the village."

{¶ 3} Appellant subsequently filed an amended complaint against appellee that asserted four claims for relief: (1) a declaratory judgment that requested the trial court to declare the parties' rights and obligations created pursuant to a 2004 village resolution, written communications, and subsequently-enacted ordinances; (2) the breach of an agreement to allow the district to connect the Wellness Center to the sewer system and enacting ordinances that

conflict with the agreement; (3) a request that the court to issue an injunction to prohibit appellee from imposing conditions for service that are contrary to, or that impair appellant's rights, under the sewer agreement; and (4) a writ of mandamus to order appellee to permit appellant to connect the Wellness Center to the sewer system without requiring appellant to annex, and further ordering appellee to issue a letter to the Ohio Environmental Protection Agency (EPA) in order to facilitate appellant obtaining approval for the Wellness Center project.

{¶ 4} Appellant premised its complaint upon an allegation that a 2004 resolution created a sewer services agreement between the parties. As background, appellant's complaint asserted that in 2004, it renovated and added onto its Ayers Road school facility. Appellant alleged that part of the project included constructing a sanitary sewer line that, for the first time, enabled it to discharge sanitary sewage from the school facility into appellee's sewer system. Appellant claimed that in the 2004 resolution, appellee agreed to provide it with a sewer tap, located on Rossiter Road, for appellant's school facility and authorized appellant to connect its sewer line to the tap and to discharge sewage into appellee's system. Appellee further averred that it paid appellee $95,000 for the sewer tap and that appellee authorized it to discharge flow through the tap in the amount of 111 Equivalent Dwelling Units (EDUs). Appellant attached the 2004 resolution to its complaint, as well as written communications between appellant and appellee concerning appellant's right to tap into the village sewer system and the amount of EDUs.

{¶ 5} The 2004 resolution states:

> A resolution authorizing the Alexander School District to connect into the Albany waste water treatment system and to begin discharging waste water flow into the said system, but requiring all issues relating to the tap fee and other matters raised in Village correspondence dated March 26, 2004, to the engineer for the Alexander School District, to be resolved within 60 days of the date of

connection, which 60 days is to commence not later than August 30, 2004.

Be it resolved by the Council of the Village of Albany, State of Ohio:

Section 1.   The Alexander School District is hereby authorized to connect its new school facility located in Alexander Township, Section 33, on Ayers Road, into the Albany Waste Water Treatment System and to begin discharging waste water flow into the said system.

Section 2.   The above approval and authorization shall expire 60 days following the date of connection/commencement of flow.   The said 60 days shall commence not later than August 30, 2004.   Within the said 60 days the said Alexander School District shall cause all requirements of the Village of Albany to be complied with, and all issues relating to tap fee and other matters raised in Village correspondence dated March 26, 2004, (a copy of which is attached) to Mr. James F. Barry III, P.E. C.F. Bird & R.J. Bull Inc., engineer for the Alexander School District, shall be resolved to the satisfaction of the Village of Albany.

Section 3.   The above authorization is contingent upon the Alexander School District shall bear [sic] all expense of constructing, replacing, and maintaining the sewer line to the sewer tap, provided however, that the Village may at any time be permitted to take complete ownership of any such line.   For purposes hereof, and for purposes of any extension of the sewer line to adjacent or other properties, the Alexander School District shall agree to grant such easements for sewer line and pumping purposes as may be necessary therefor as determined by the Village.[1]

{¶ 6} Appellant's complaint also incorporated a May 13, 2004 letter from the village

mayor to the school superintendent, which states that appellant

is approved for physical connection to the Albany Waste Water Treatment collection system.   The School District may therefore cause its contractor to tap into the Village sewer line on Rossiter Road in accordance with the plans and specifications of the Albany Waste Water Treatment Project, copies of which your Engineer and your contractor have.

This letter is specifically for authorization to cause physical tap in to the sewer line.   Authorization for use of that tap and hook in is not here given, but rather is held in abeyance pending resolution of the Tap Fee to be charged by the Village to the School District.   It is anticipated that the Village will determine the Tap Fee to be charged shortly, but this will need to be resolved prior to the School District's commencement of usage.   * * * *

The School District will otherwise need to comply, with respect to the sewer line it constructed, with the terms of the April 8, 2004 Letter to Neil Pratt *

---

[1]  Although the resolution indicates that a copy of the letter is attached, a copy of the letter is not attached to the copy of the resolution appellant attached to its complaint.

\* \*.

{¶ 7} Also attached to appellant's complaint is a June 30, 2004 letter that explains appellee's calculation of the Equivalent Dwelling Units (EDUs) for the school. The letter states that the village engineer expected the school to create 22,200 gallons per day of sewage, which equals 111 EDUs per day. Appellant additionally attached copies of documents evidencing its payment of $95,000 to appellee, as well as copies of recent sewer bills.

{¶ 8} Appellee filed a motion to dismiss appellant's amended complaint and alleged that appellant's complaint fails to state a claim upon which relief can be granted. In particular, appellee asserted that the complaint is based upon the assertion that the 2004 resolution granted appellant the right to tap the Wellness Center into appellee's sewer system. Appellee contended, however, that the plain and unambiguous language of the resolution does not give appellant the right to connect the Wellness Center to the sewer system, and thus, all of its claims must fail.

{¶ 9} Appellee argued that appellant's claims for relief are all premised upon its supposition that the Wellness Center falls within the terms of the 2004 resolution that permitted appellant to connect its "new school facility" to the sewer system. Appellee argued that appellant's Wellness Center, constructed more than ten years from the date of the resolution, does not constitute part of appellant's "new school facility" as contemplated in the 2004 resolution. Instead, appellee claimed that the phrase "new school facility" clearly and unambiguously authorized appellant to connect only "the School that had newly been renovated in 2004." Appellee also asserted that the resolution used the verb "located" in the past tense to manifest its intention that the resolution only authorized appellant "to connect its new school

facility, as it existed as of the date the resolution was passed, to [appellee]'s sewer system." Appellee further contended that the Wellness Center does not constitute a "school facility" because appellant alleged that the Wellness Center would also serve the community, as well as students. Appellee thus argued that even if the resolution represents a contract or an agreement between the parties, appellant could prove no set of facts to show that it has any right to connect the Wellness Center to appellee's sewer system.

{¶ 10} Additionally, appellee asserted that the trial court should reject appellant's request to consider additional written documents when construing the resolution. Appellee contended that the language of the resolution is plain and unambiguous, and thus, the court may not consider the additional documents to ascertain the resolution's meaning.

{¶ 11} Appellee additionally argued that the resolution provided appellant with a sixty-day window within which to connect its "new school facility." Appellee asserted that once the sixty-day window expired, appellant no longer possessed the authority to make any additional connections to its sewer system. Appellee contended that appellant's 2015 application to connect the Wellness Center clearly fell far outside the sixty-day window.

{¶ 12} Appellee also claimed that because it does not have a contractual obligation to provide sewer services to appellant, it has the right to require appellant to annex to the village in order to receive sewer services. Appellee alternatively contended that it gave appellant reasonable notice that appellee terminated any agreement that existed between the parties. Appellee claimed that it posted a 2010 ordinance limiting sewer taps to property owners who annex their property into the village and publicly posted the ordinance in various locations throughout the village. Appellee argued that publicly posting the ordinance provided appellant

with constructive notice.  Appellee also asserted that appellant received actual notice during a May 20, 2015 Village Council Meeting.  Appellee claimed that during the meeting, the council and the mayor advised appellant's representatives of the ordinance and its applicability to the Wellness Center, and that the council further informed appellant that the Wellness Center could not tap into appellee's sewer system, unless appellant annexed its property into the village.

{¶ 13} In opposition, appellant argued that its complaint sets forth valid claims for relief. Appellant contended that the complaint alleges "(1) the existence of a contract for sanitary sewer services; (2) the terms of the contract; (3) the consideration paid for the contract; (4) Defendant's breach of the contract; (5) damages resulting from Defendant's breach; and (6) Defendant's duties to Plaintiff by virtue of the contract and its sewer use regulations."  Appellant claimed, in essence, that the 2004 resolution constitutes the essential contract between the parties, and that additional documents supply the precise terms of the contract, i.e., payment of $95,000 and the number of EDUs the school may discharge.

{¶ 14} Appellant further disagreed with appellee's assertion that the 2004 resolution clearly and unambiguously prohibits it from connecting the Wellness Center to the sewer system. Appellant contended that none of the language contained in the resolution clearly and unambiguously restricted its authority to connect only the school buildings that existed in 2004. Instead, appellant asserted that the resolution uses ambiguous language that fails to clearly indicate that appellant lacks authority to connect future buildings, such as the Wellness Center, to appellee's sewer system.  Appellant argued that the phrase "new school facility" as used in the resolution does not mean only the buildings that existed in 2004, but rather also includes buildings that appellant may renovate, demolish, construct, or reconstruct as part of its overall

school facility. Appellant additionally asserted that the Wellness Center is a school facility according to the definition of a classroom facility set forth in R.C. 3318.01(B).

{¶ 15} Appellant also disagreed with appellee's argument that the 2004 resolution contains a sixty-day window within which appellant could connect and discharge into the system, and that after that sixty-day period, appellant no longer possessed authority to connect or discharge into the system. Appellant claimed that appellee's interpretation is contrary to the plain language of the resolution, contrary to the parties' actions, and contrary to common sense. Appellant asserted that the sixty-day time period referred to the amount of time appellant had to pay the sewer tap fee and to fulfill various other requirements, not to provide a window of authorization for discharging into the sewer system that would expire and then forever prevent appellant from using the sewer tap.

{¶ 16} In response, appellee reiterated its position that the resolution is not a contract between the parties. Appellee asserted that the resolution does not contain the words "contract" or "agreement," does not identify an offer, does not reflect an acceptance, does not show a meeting of the minds, and does not contain any essential terms of a purported contract. Appellee claimed that the resolution is instead a legislative enactment that clearly manifests its intent "to authorize [appellant] to connect its school facility, which was newly renovated in 2004, to [appellee]'s sewer system," and not to connect a building constructed more than ten years later. Appellee argued that the 2004 resolution does not authorize future connections to its sewer system resulting from the construction of additional buildings on school property.

{¶ 17} The trial court agreed with appellee and determined that the phrase "new school facility" clearly and unambiguously does not include a building constructed more than ten years

after the resolution that authorized appellant to tap into appellee's sewer system.   The court found "[w]ithout question" that "new school facility," as used in the 2004 resolution, referred to the 2004 construction project and thus, the 2015 Wellness Center could not reasonably be construed to fall within the meaning of "new school facility."   The trial court concluded that the resolution contemplated connecting appellant's new school facility as it existed in 2004, and did not authorize appellant to connect future facilities to the system.   The trial court determined that appellant "has no viable claim against the Village under any cause of action set forth in the complaint."   Thus, the court dismissed appellant's complaint.   This appeal followed.[2]

{¶ 18} Appellant's three assignments of error assert, in essence, that the trial court erred by granting appellee's Civ.R. 12(B)(6) motion to dismiss the complaint.[3]   Because the three

---

[2]  We observe that the day after the trial court entered its judgment dismissing appellant's complaint, appellant filed a Civ.R. 41(A) notice of dismissal.   Civ.R. 41(A), however, "'pertains only to the voluntary dismissal of a pending case.'" *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶23, quoting *Countrywide Home Loans Servicing, L.P. v. Nichpor*, 136 Ohio St.3d 55, 2013-Ohio-2083, 990 N.E.2d 565, ¶8.   In the case at bar, once the trial court dismissed appellant's complaint, the case was no longer pending.   Thus, appellant's Civ.R. 41(A) notice of dismissal appears to be of no effect.

[3]  We point out that appellant's assignments of error seem to confuse the "assignments of error" with the "statement of the issues." App.R. 16(A)(3) and (4) require an appellant's brief to set forth an assignment of error and a statement of the issues.   "[T]he assignments of error are purely for the purpose of pinpointing the source of the alleged error."   Painter and Pollis, Ohio Appellate Practice (2016 Ed.), Section 5:13.   "The 'Assignments of Error' should designate specific rulings which the appellant challenges on appeal.   They may dispute the final judgment itself or other procedural events in the trial court." *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 343, 476 N.E.2d 388 (8th Dist.1984); *accord Davis v. Byers Volvo*, 4th Dist. Pike No. 11CA817, 2012–Ohio–882, 2012 WL 691757, fn. 1, citing Painter and Dennis, Ohio Appellate Practice (2007 Ed.), Section 1.45 (stating that "the assignments of error * * * set forth the rulings of the trial court * * * contended to be erroneous"); *see also* App.R. Rule 16 (1992 staff notes) (setting forth an example of a proper assignment of error as, "The trial court erred in overruling defendant-appellant's motion for directed verdict. (Tr. _____)").

On the other hand, "the statement of the issues gives the appellant an opportunity to begin to explain, through advocacy, how the trial court erred."   Painter and Pollis, Section 5:13.   "The 'Statement of Issues' should express one or more legal grounds to contest the procedural actions challenged by the assigned errors.   They may subdivide questions presented by individual assigned errors, or they may be substantially equivalent to the assigned errors."   *N. Coast Cookies, Inc.*, 16 Ohio App.3d at 343–44 accord App.R. 16 (1992 Staff Notes) (explaining that "[t]he issues presented are the issues raised by the assignments of error").

assignments of error share the same basic legal principles, for ease of discussion we consider them together.

{¶ 19} In its first assignment of error, appellant asserts that the trial court incorrectly determined that the 2004 resolution clearly and unambiguously prevents appellant from connecting the 2015 Wellness Center to appellee's sewer system. More particularly, appellant argues that the trial court erroneously construed the phrase "new school facility" to mean only those buildings constructed during appellant's 2004 renovations.

{¶ 20} In its second assignment of error, appellant contends that the trial court wrongly concluded that its complaint failed to state any valid claim for relief. Appellant asserts that its complaint sufficiently sets forth a breach of contract claim, as well as requests for declaratory and injunctive relief and for the issuance of a writ of mandamus.

{¶ 21} In its third assignment of error, appellant argues that the trial court incorrectly relied upon *Slife v. Kundtz Properties, Inc.,* 40 Ohio App.2d 179, 318 N.E.2d 557 (8th Dist.1974), to support its decision to grant appellee's motion to dismiss the complaint.

---

In the case at bar, the specific legal ruling appellant challenges is the trial court's decision granting appellee's motion to dismiss. None of appellant's "assignments of error," however, explicitly states that the court erred by granting appellee's motion to dismiss. Instead, appellant's "assignments of error" express the legal grounds to contest the court's decision, and therefore, appear to be more properly classified as statements of the issues.

If an appellant does not comply with the Appellate Rules, we have the authority to disregard the assignment of error or dismiss the appeal. *State v. Coleman*, 4th Dist. Highland No. 16CA11, 2017-Ohio-1067, 2017 WL 1103571, fn.1; *Hart v. Hudson*, 4th Dist. Pickaway No. 10CA19, 2010–Ohio–5954, 2010 WL 4949654, ¶11; *Salisbury v. Smouse*, 4th Dist. Pike No. 05CA737, 2005–Ohio–5733, 2005 WL 2812754, ¶11–12 (noting that appellate court has "discretion to dismiss an appeal for a party's failure to comply with the Appellate Rules"). "However, 'it is a fundamental tenet of judicial review in Ohio that courts should decide cases on the merits.'" *Salisbury* at ¶12, quoting *DeHart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189, 192, 431 N.E.2d 644 (1982), citing *Cobb v. Cobb*, 62 Ohio St.2d 124, 403 N.E.2d 991 (1980). In the interests of justice, therefore, we will construe appellant's assignments of error as collectively asserting that the trial court erred by granting appellee's motion to dismiss based upon the legal grounds expressed within the assignments of error.

A

Standard of Review

**{¶ 22}** Appellate courts conduct a de novo review of trial court decisions granting a Civ.R. 12(B)(6) motion to dismiss. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶12, citing *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶5. We therefore afford no deference to the trial court's decision, but instead, independently review the trial court's decision. *Struckman v. Bd. of Education of Teays Valley Loc. Sch. Dist.*, 4th Dist. Pickaway No. 16CA10, 2017-Ohio-1177, 2017 WL 1193817, ¶18.

B

Civ.R. 12(B)(6) Standard

**{¶ 23}** Civ.R. 12(B)(6) allows a party to file a motion to dismiss a complaint for failing to state a claim upon which relief can be granted. "[A] Civ.R. 12(B)(6) motion to dismiss tests only the sufficiency of the allegations." *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶9, citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger,* 42 Ohio St.3d 116, 117, 537 N.E.2d 1292 (1989); *accord State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,*65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992) (explaining that a Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of the complaint). Consequently, a trial court may not grant a motion to dismiss for failure to state a claim simply because the court "doubts the plaintiff will prevail." *Bono v. McCutcheon*, 159 Ohio App.3d 571, 2005-Ohio-299, 824 N.E.3d 1013 (2nd Dist.), ¶8; *accord Barton v. Cty. of Cuyahoga,* 8th Dist. Cuyahoga No. 105008, 2017-Ohio-7171, 2017 WL 3432670, ¶18; *Slife,* 40 Ohio App.2d at

185–86. "Rule 12(B)(6) motions should be granted only where the allegations in the complaint show the court to a certainty that the plaintiff can prove no set of facts upon which he might recover." *Slife,* 40 Ohio App.2d at 185–86; *accord State Auto. Mut. Ins. Co. v. Titanium Metals Corp.*, 108 Ohio St.3d 540, 2006-Ohio-1713, 844 N.E.2d 1199, ¶8 (stating that "a trial court must examine the complaint to determine if the allegations provide for relief on any possible theory"). Accordingly, a trial court may grant a motion to dismiss for failure to state a claim only if it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union,* 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus; *e.g., LeRoy v. Allen, Yurasek & Merklin,* 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, ¶14; *Maitland v. Ford Motor Co.,* 103 Ohio St.3d 463, 816 N.E.2d 1061, 2004–Ohio–5717, ¶11; *York v. Ohio State Highway Patrol,* 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). Additionally, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 9–10, 479 N.E.2d 275, 276–77 (1985) (citations omitted). Consequently, Civ.R. 12(B)(6) dismissals are "reserved for the rare case that cannot possibly succeed." *Tri-State Computer Exchange, Inc. v. Burt*, 1st Dist. Hamilton No. C-020345, 2003-Ohio-3197, 2003 WL 21414688, ¶12.

{¶ 24} When a trial court considers a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must presume that all factual allegations contained in the complaint are true and must construe all reasonable inferences in favor of the nonmoving party. *E.g., State ex rel. Talwar v. State Med. Bd. of Ohio,* 104 Ohio St.3d 290, 2004–Ohio–6410, 819 N.E.2d 654, ¶5; *Perez v. Cleveland,* 66 Ohio St.3d 397, 399, 613 N.E.2d 199 (1993). "This standard is consistent with Civ.R. 8(A), which provides for notice pleading

and requires only (1) 'a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled.'" *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 549, 605 N.E.2d 378 (1992). "The purpose of [Civ.R. 8(A)] is to notify the defendant of the legal claim against him." *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 9–10, 479 N.E.2d 275, 276–77 (1985) (citation omitted). Accordingly, a complaint is not "fatally defective and subject to dismissal" simply because it does not set forth each element of a cause of action "with crystalline specificity." *Border City Sav. & Loan Ass'n. V. Moan*, 15 Ohio St.3d 65, 66, 472 N.E.2d 350 (1984). "Thus, to survive a motion to dismiss for failure to state a claim upon which relief can be granted, a pleader is ordinarily not required to allege in the complaint every fact he or she intends to prove; such facts may not be available until after discovery." *State ex rel. Hanson*, 65 Ohio St.3d at 549. A complaint must, however, "'contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Schlenker Ents., L.P. v. Reese*, 3rd Dist. Auglaize Nos. 2-10-16 and 2-10-19, 2010-Ohio-5308, 29, quoting *Fancher v. Fancher*, 8 Ohio App.3d 79, 83, 455 N.E.2d 1344 (1st Dist. 1982). "Consequently, 'as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶29, quoting *York*, 60 Ohio St.3d at 145.

**{¶ 25}** Furthermore, a court that is reviewing a Civ.R. 12(B)(6) motion to dismiss "cannot rely on evidence or allegations outside the complaint." *State ex rel. Fuqua v. Alexander,* 79 Ohio St.3d 206, 207, 680 N.E.2d 985 (1997). However, "[m]aterial incorporated in a complaint

may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss." *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 673 N.E.2d 1281, (1997), fn. 1 (citations omitted). Thus, a court may consider written instruments attached to a complaint when ruling on a Civ.R. 12(B)(6) motion to dismiss. *Cooper v. Highland Cty. Bd. Of Commrs.*, 4th Dist. Highland No. 01CA15, 2002-Ohio-2353, ¶9.

{¶ 26} When a complaint is based upon written instruments properly incorporated into the complaint, courts must accept the writings as true and afford the plaintiff "all reasonable inferences possibly derived therefrom." *Volbers* at ¶12. A Civ.R. 12(B)(6) dismissal is proper only when the language used in the written instrument is clear and unambiguous and creates "an insuperable bar to relief." *Slife*, 40 Ohio App.2d at 186; *Struckman* at ¶20; *Demeraski v. Bailey*, 2015-Ohio-2162, 35 N.E.3d 913, ¶18 (8th Dist.). Conversely, trial courts should not dismiss a complaint for failing to state a claim when a writing is open to interpretation. *Slife*, 40 Ohio App.2d at 184; *accord Cooper* at ¶9.

C

BREACH OF CONTRACT

{¶ 27} Appellant's complaint and claims for relief are founded upon its allegation that the 2004 resolution created a contract for sewer services and that appellee breached this contract. Appellee argues that appellant can prove no set of facts to establish the existence of a contract for sewer services, and that even if it could, appellant can prove no set of facts to establish that appellee breached the contract.

{¶ 28} "To prove a breach of contract claim, a plaintiff generally must show the existence of a contract, performance by the plaintiff, a breach by the defendant, and damage or loss to the

plaintiff." *McCamon-Hunt Ins. Agency, Inc. v. Med. Mut. Of Ohio*, 2003-Ohio-1221, 2003 WL 1193812, ¶ 10 (7th Dist. Mahoning).

> The existence of a contract is a question of law. *Telxon Corp. v. Smart Media of Delaware, Inc.*, Summit App. Nos. 22098 and 22099, 2005-Ohio-4931, 2005 WL 2292800, at ¶40; *see also Hocking Valley Community Hosp. v. Community Health Plan of Ohio*, Hocking App. No. 02CA28, 2003-Ohio-4243, 2003 WL 21904586, at ¶11. "[T]o declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." (Citations omitted.) *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. A contract does not exist unless the parties have a meeting of the minds as to the essential terms of the contract. *Id.*; *see also Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶16.

*Union Stock Yards v. Hillsboro*, 191 Ohio App.3d 564, 2010-Ohio-5975, 947 N.E.2d 183, ¶10 (4th Dist.).

{¶ 29} In addition to basic contract formation requirements, a municipal corporation[4] may enter into a contract only as provided by statute. *Union Stock Yards at* ¶18 (4th Dist.), citing *Pugh v. Ned Peppers*, 2nd Dist. Montgomery No. 22939, 2010-Ohio-1917, 2010 WL 1732634, ¶47. Thus, a city "cannot be bound by a contract that is not properly endorsed or 'formally ratified through proper channels.'" *Pugh* at ¶48, quoting *Wellston v. Morgan* (1901), 65 Ohio St. 219, 62 N.E. 127, paragraph three of the syllabus. An individual or entity entering into a contract with a municipality bears the burden of "'ascertain[ing] whether the contract complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril.'" *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶28, quoting *Lathrop Co. v. Toledo*, 5 Ohio St.2d 165, 173, 34

---

[4] A municipal corporation includes a village. *See* R.C. 703.01(A) ("Municipal corporations, which, at the last federal census, had a

O.O.2d 278, 214 N.E.2d 408 (1966).

{¶ 30} In the case at bar, we must examine whether the complaint and its attachments show that appellant might be able to prove a set of facts establishing the existence of a contract between the parties. We initially observe that appellee did not argue that any contract that might exist between the parties failed to comply with statutory formalities. We therefore presume, solely in the limited context of reviewing appellee's Civ.R. 12(B)(6) motion, that any statutory formalities were met. We further point out that R.C. 731.14 states: "All contracts made by the legislative authority of a village shall be executed in the name of the village and signed on its behalf by the mayor and clerk." The resolution that appellant alleges creates the contracts contains the village's name and is signed by both the mayor and the clerk of council.

{¶ 31} While we recognize that appellant's complaint alleges the existence of a contract, the existence of a contract is a question of law. *Union Stock Yards* at ¶10. Therefore, the existence of a contract is a legal conclusion and not a factual allegation. Courts are not required to accept unsupported, legal conclusions as true when reviewing Civ.R. 12(B)(6) motions to dismiss. *Struckman* at ¶19, citing *McGlone v. Grimshaw*, 86 Ohio App.3d 279, 285, 620 N.E.2d 935 (4th Dist. 1993). We therefore must examine whether the complaint alleges sufficient facts such that appellant might be able to prove a set of facts to establish the existence of a contract.

{¶ 32} In the case sub judice, we do not believe that the resolution, on its own, establishes all of the elements of a contract. However, the allegations in appellant's complaint and the attached documents show that appellant could arguably prove a set of facts to establish the existence of a contract. The resolution reflects appellee's consent to allow appellant to connect

population of five thousand or more * * * are cities. All other municipal corporations are villages.").

into its waste water treatment system and refers to an extraneous "village correspondence dated March 26, 2004" that defines appellant's obligations before it may connect to the sewer system. This correspondence is not attached to the resolution or to appellant's complaint. Appellant's complaint asserts, however, that one of its obligations was the payment of a $95,000 tap fee. Appellant's complaint alleges that the other condition concerned the tap flow capacity. Appellant averred that it paid $95,000 for the flow capacity of 111 EDUs. Appellant thus alleges that under the sewer service agreement, it has "a right to discharge flow" through the tap for the school facility in the amount of 111 EDUs. In accordance with the Civ.R. 12(B)(6) standard, we must construe these allegation as true.

{¶ 33} Appellant did attach to its complaint a May 13, 2004 letter, signed by the mayor, stating that appellant may tap into the sewer line "in accordance with the plans and specifications of the Albany Waste Water Treatment Project, copies of which your Engineer and your contractor have." This language suggests that appellee and appellant had reached some type of agreement, with specifications, that allowed appellant to tap into appellee's sewer system. Although appellant apparently did not include all of the documentation exchanged between the parties relating to the 2004 resolution, appellant's complaint sufficiently pleads the existence of a contract. Once again, construing all allegations in appellant's favor, we must conclude that appellant's complaint sufficiently alleges facts that might establish the existence of a contract for sewer services. The complaint and attachments show that appellant might be able to present a series of facts establishing that the parties reached an agreement for sewer services.

{¶ 34} We next consider whether the documents purporting to establish a contract contain clear and unambiguous language showing to a certainty that appellee performed in accordance

with the terms of the alleged contract, or whether the language is ambiguous and fails to show, beyond doubt, that appellant can prove no set of facts establishing that appellee failed to perform in accordance with the alleged contract.

{¶ 35} We initially note that the parties dispute whether we should construe the resolution as a legislative enactment or as a contract. However, when we review a motion to dismiss, we must construe all reasonable inferences in appellant's favor. As we explained above, we believe that the complaint sufficiently alleges the existence of a contract, and thus, that we should construe the documents according to principles of contract interpretation. In the case at bar, however, we do not find it necessary to determine whether to construe the resolution as a legislative enactment or as part of a contract.[5] While we recognize that the interpretation of legislation differs from the interpretation of a contract, we do not believe that the initial question concerning whether language is unambiguous or ambiguous significantly differs.

{¶ 36} The first question we must answer when reviewing either legislation or written instruments is whether the language used is plain and unambiguous. *Bohlen v. Anadarko E & P Onshore, L.L.C.*, 150 Ohio St.3d 197, 2017-Ohio-4025, 80 N.E.3d 468, ¶15, quoting *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989), syllabus (stating that "courts must apply a cardinal principle of contract law: the unambiguous language of the contract governs and courts 'will not give the contract a construction other than that which the plain language of the contract provides'"); *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, quoting *State v. Hurd*, 89 Ohio St.3d 616, 618, 734 N.E.2d 365

---

[5] We observe that in *Jacot v. Secrest*, 153 Ohio St. 553, 558, 93 N.E.2d 1 (1950), the court held that "'[a] contract made in pursuance of a statute or resolution, must be construed as though such statute or resolution had been incorporated into such contract.'" *Banks v. De Witt*, 42 Ohio St. 263 (1884), paragraph two of the syllabus.

(2000) (explaining that a court's first step when considering the meaning of a statute "is always to determine whether the statute is 'plain and unambiguous'"); *World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St.3d 11, 2016-Ohio-2913, 68 N.E.3d 738, ¶36, quoting *Beasley v. Monoko, Inc.*, 195 Ohio App.3d 93, 2011-Ohio-3995, 958 N.E.2d 1003, ¶30 (10th Dist.) ("'when the terms are unambiguous and clear on their face, the court need not look beyond the plain language of the contract to determine the rights and obligations of the parties.'"); *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶22, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶11 ("'When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.'"). When a written instrument–be it legislative enactment, contract, or other–is clear and unambiguous, a court need not look beyond the plain language of the writing, but instead, must apply it as written. *E.g., Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923. "'Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶29, quoting *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. "As a matter of law, a [writing] is unambiguous if it can be given a definite legal meaning." *Galatis* at ¶11.

{¶ 37} "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller–Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896

N.E.2d 666, ¶16.  When a writing is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent.  *Galatis* at ¶12.  As the court explained in *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, 71 N.E.3d 1010, ¶9:

> "Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313–314, 667 N.E.2d 949 (1996).  This is particularly true "when circumstances surrounding an agreement invest the language of the contract with a special meaning, [because] extrinsic evidence can be considered in an effort to give effect to the parties' intention."  *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104, ¶29.  Extrinsic evidence can include "(1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement." *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 56, 716 N.E.2d 1201 (2d Dist.1998).

"It is generally the role of the finder of fact to resolve ambiguity."  *Galatis* at ¶13.

{¶ 38} In the case at bar, if the language used in the parties' alleged sewer services agreement is plain and unambiguous, then we need not interpret it, but rather, simply apply it to determine whether appellant can prove any set of facts entitling it to relief.  If, however, the language is capable of bearing more than one meaning, then the language is ambiguous and appellant might be able to prove a set of facts to demonstrate that it is entitled to the requested relief.  If the language is ambiguous, the parties' alleged agreement requires interpretation and renders a Civ.R. 12(B)(6) dismissal improper.

{¶ 39} In the case sub judice, we do not believe that the terms of the alleged sewer services agreement are so plain and unambiguous as to present an insuperable bar to recovery.  Instead, we believe that the language used in the resolution and the other documents that purport

to define the terms of the alleged sewer services agreement are susceptible of more than one reasonable interpretation.

{¶ 40} We note that the attachments to the complaint do not appear to fully define all of the terms of the parties' agreement. As we indicated earlier, the resolution itself refers to an extraneous document and this document is not attached to appellant's complaint. Nevertheless, appellant has alleged the terms of the purported agreement in its complaint. Additionally, the parties' main dispute focuses upon whether the language used in the resolution clearly and unambiguously means that appellant does not have any contractual right to connect the Wellness Center to appellee's sewer system. We therefore believe that we may consider whether the documents attached to appellant's complaint reasonably support its interpretation of the agreement, or whether the documents plainly and unambiguously show that appellant cannot prove any set of facts showing that it is entitled to the requested relief.

{¶ 41} Appellant argues that the 2004 resolution provided it with the authority to connect the 2004 newly-renovated school facility to appellee's sewer system via a main sewer line, and that nothing in the resolution prohibits future connections to its main sewer line. Appellant appears to contend that the parties' agreement was limited only by the number of EDUs it could discharge into appellee's sewer system. Appellant thus posits that under the parties' agreement, it can add future connections to its sewer line, located on school property, as long as the discharge to appellee's sewer system does not exceed 111 EDUs.

{¶ 42} Appellee argues that first and foremost, the resolution did not create a sewer services contract between appellee and appellant. Appellee contends that the resolution does not spell out any terms of a purported contract and fails to evince a meeting of the minds. Appellee

asserts that even if the resolution constitutes a contract, the resolution unambiguously provided that appellant could connect its "new school facility" as it existed in 2004 into appellee's sewer system. Appellee claims that because the Wellness Center did not exist when appellee enacted the resolution, the Wellness Center necessarily is not included in the phrase "new school facility." Appellee further contends that the resolution does not contain any language indicating that appellee granted appellant perpetual authority to connect any and all future buildings located on the property into the sewer system. Instead, appellee argues that the resolution granted appellant a sixty-day window within which to connect to appellee's system and that after the sixty days elapsed, appellant no longer had any authority to connect any buildings located on its property to the sewer system.

{¶ 43} While all of appellee's propositions may be reasonable interpretations of the 2004 resolution, they are not the only interpretations. The 2004 resolution generally authorizes appellant "to connect into" appellee's sewer system and "to begin discharging waste water flow into the said system." Although appellant's complaint does not indicate on what date it connected into the sewer system and began to discharge into it, neither party has alleged that appellant has not connected into the system and begun discharging into it. Thus, presumably, these two things happened sometime in 2004–shortly after the resolution was enacted.

{¶ 44} Section 1 of the resolution states that appellant is "authorized to connect its new school facility located in Alexander Township, Section 33, on Ayers Road, into [appellee's sewer system] and to begin discharging waste water flow into the said system." Again, presumably, these two things already happened.

{¶ 45} Section 2 states that "[t]he approval date and authorization shall expire 60 days

following the date of connection/commencement of flow" and that the "60 days shall commence not later than August 30, 2004." This language appears to mean that appellant had a 60-day window within which to connect its new school facility to appellee's sewer system and to begin discharging. We again point out that appellant's complaint does not contain the date it connected its new school facility as it existed in 2004 to appellee's sewer system. Apparently, however, appellant did connect the 2004 new school facility and begin to discharge into appellee's system some time ago. Thus, construing all of the facts most favorably to appellant, appellant already has connected the 2004 new school facility to appellee's sewer system and begun to discharge into the system.

{¶ 46} The question now is whether appellant may connect a newly-constructed building to a sewer line located within the boundaries of the new school facility, which would then connect to appellee's sewer system. We do not believe the resolution contains any explicit language that purports to limit appellant's ability to connect future sewer lines that connect to future buildings added onto school property. Instead, the resolution addresses the connection of the 2004 "new school facility" to appellee's sewer system. While the resolution does seem to provide appellant with a sixty-day window within which to connect its "new school facility," appellant apparently did so sometime in 2004, after the resolution's enactment. The resolution, however, does not plainly and unambiguously prohibit appellant from connecting a newly-constructed building that appellant added onto the property housing its 2004 "new school facility." The resolution does not contain any language to suggest that appellant cannot add future buildings to its "new school facility" and connect those buildings to the tap serving the "new school facility."

**{¶ 47}** Furthermore, appellant alleges that the parties' agreement allows it to discharge up to 111 EDUs and that adding the Wellness Center will not exceed this amount. Thus, appellant can equally prove a set of facts that might show that appellee failed to perform in accordance with the parties' agreement.

**{¶ 48}** Consequently, we do not believe that the resolution and other writings are sufficiently clear and unambiguous terms so as to create an insuperable bar to appellant's claims for relief. We cannot state that, as a matter of law, the writings clearly and unambiguously preclude appellant's claims for relief.

**{¶ 49}** Appellee nevertheless asserts that its 2010 and 2015 ordinances[6] demonstrate that appellant cannot possibly prove any set of facts to show that it is entitled to relief. Appellee claims that the ordinances terminated any agreement that it may have had with appellant. Appellee alleges that it had the right to terminate, with reasonable notice, any contract that it may have entered to provide sewer services to appellant. Assuming, arguendo, that appellee's

---

[6] Both the 2010 and 2015 ordinances are attached to appellant's complaint. The 2010 ordinance states: "That the Village of Albany shall not provide sewer taps outside the Village unless the property served by the tap is annexed into the Village."

The 2015 ordinance states that it is "an ordinance to establish authorization to connect and use of the Albany Wastewater Treatment System for Discharge of Sewage" and provides as follows:

Section 1. That No person or entity shall connect a waste water producing facility or source into the Albany Waste Water Treatment System (System) nor shall discharge any wastewater or any substance of material into the System without first having obtained from the Village of Albany Waste Water Treatment System a prior written permit to connect and discharge.

Section 2. That the permission to connect or discharge granted to any existing user, person, or entity, shall be strictly limited to the facilities presently existing as of the date the permission was granted. Concerning each additional facility (whether newly constructed or newly proposed for connection or discharge) for which the user, person, or entity intends of proposes to connect or discharge into the System, each connection or discharge into the system from such additional facility shall first require a new permit to be issued.

* * * *.

proposition is a correct statement of the law, whether appellee gave appellant reasonable notice that it terminated the purported agreement appears to be an inappropriate issue to determine in the context of a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. *See generally Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, ¶96 (determining that summary judgment improper and stating that whether notice was reasonable is "an initial question of fact"). Instead, a Civ.R. 12(B)(6) motion requires a court to examine whether the complaint states a claim, not whether the plaintiff ultimately will prevail. In the case judice, we believe that for purposes of Civ.R. 12(B)(6) appellant's complaint adequately states a claim for relief.

{¶ 50} Appellee agrees that appellant's additional claims for relief–declaratory judgment, injunctive relief, and mandamus–"rise and fall with the trial court's * * * determination that the sewer tap authorization for the School District's 'new school facility' did not include the yet-to-be conceived 2015 community Wellness Center." If appellee possesses no contractual obligation to allow appellant to connect the Wellness Center to the sewer system, then appellee is not entitled to a declaration to the contrary, to injunctive relief requiring appellee to allow the connection, or to a writ of mandamus compelling appellee to allow the connection. We determined, however, that appellant's complaint sufficiently sets forth a claim for relief founded upon a contractual obligation. Thus, appellant's remaining claims for relief founded upon the alleged contractual obligation also state a claim upon which relief can be granted.[7]

---

[7] *See generally Trumbull Cty. Bd. of Commrs. v. Warren*, 142 Ohio App.3d 599, 603, 756 N.E.2d 690 (11th Dist.2001) (concluding that city ordinance requiring annexation in order to receive sewer service interfered with obligation of contracts clause contained in Ohio Constitution and explaining that to "allow the city to condition sewage service on annexation would certainly frustrate the contract's purpose

{¶ 51} Therefore, we conclude that for purposes of Civ.R. 12(B)(6) analysis appellant's complaint sufficiently pleads its claims for relief and that it could prove a set of facts that establish its entitlement to relief. We, however, emphasize that our decision is not an opinion regarding whether appellant ultimately will prevail. Rather, we simply conclude that appellant's complaint satisfies the liberal pleading requirements of Civ.R. 8(A) and adequately states a claim for relief. Once again, we emphasize that in general a Civ.R. 12(B)(6) motion is viewed with disfavor, rarely granted and reserved for those rare cases that cannot possibly succeed. *Wilson, supra*; *Tri-State Computer Exchange, supra.* The case sub judice is not one of those cases.

{¶ 52} Accordingly, based upon the foregoing reasons, we sustain appellant's three assignments of error and reverse the trial court's judgment.

JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

and substantially impair its express terms").

[Cite as *Alexander Local School Dist. Bd. of Edn. v. Albany*, 2017-Ohio-8704.]
JUDGMENT ENTRY

It is ordered that the judgment be reversed and cause remanded for further proceedings consistent with this opinion.   Appellant shall recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

BY:_____
Matthew W. McFarland, Judge

BY:_____
Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

[Cite as *Alexander Local School Dist. Bd. of Edn. v. Albany*, 2017-Ohio-8704.]