[Cite as *Fraternal Order of Police Ohio Labor Council, Inc. v. Uhrichsville*, 2018-Ohio-3344.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| FRATERNAL ORDER OF POLICE | : | Hon. W. Scott Gwin, P.J. |
| OHIO LABOR COUNCIL, INC. | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, J. |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | Case No. 2018 AP 01 0002 |
| | : | |
| CITY OF UHRICHSVILLE | : | |
| | : | OPINION |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:      Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 2016 CV 07 0501

JUDGMENT:      Reversed and Dismissed

DATE OF JUDGMENT ENTRY:      August 20, 2018

APPEARANCES:

For Plaintiff-Appellee

MICHAEL PIOTROWSKI
2721 Manchester Road
Akron, OH 44319

For Defendant-Appellant

ROBERT TSCHOLL
400 South Main Street
North Canton, OH 44720

*Gwin, P.J.*

{¶1} Appellant appeals the December 21, 2017 judgment entry of the Tuscarawas County Court of Common Pleas granting appellee's motion to compel arbitration.

*Facts & Procedural History*

{¶2} Appellant, the City of Uhrichsville ("City") is a public employer subject to collective bargaining under R.C. 4117. Appellee, the Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP") is an organization which has been chosen as the exclusive bargaining representative for the police patrolmen employed by the City.

{¶3} Article 21, Section 03 of the Collective Bargaining Agreement ("CBA") between the City and the FOP, effective from November 1, 2011 to October 31, 2014, provided as follows:

> **Section 03.** Effective November 1, 2011, the City shall pay six and one half (6 1/2%) percent of the statutorily required employee contribution into the pension system. Effective November 1, 2012, the City shall contribute three (3%) of that cost. Effective January 1, 2013, the City shall not pay any portion (zero percent) of the employees required contribution into the pension system.

{¶4} On May 11, 2012, the City and the FOP entered into a Memorandum of Understanding ("MOU") to modify the terms of the CBA. The MOU provided the following modification regarding the employee contribution into the pension system:

> Article 21 Section 03 (Wages) shall be modified as follows. Effective the first full pay period following the signing of this MOU (or the pay period

commencing on May 13, 2012, whichever is earlier), the bargaining unit members shall be responsible for the full amount of the statutorily required employee contribution into the pension system.

{¶5} The City and the FOP commenced negotiations for a successor agreement in 2014, but were unable to reach agreements on all terms. The parties then submitted their contested issues to a fact-finder with the State Employment Relations Board ("SERB"). The fact-finder issued his report on May 20, 2015 and both parties accepted this report.

{¶6} The parties then were to draft the successor CBA, which would incorporate any negotiated changes, plus those changes recommended by the fact-finder. The FOP created multiple drafts of the successor CBA. The first draft did not provide for the City to pay any of the employee portions to the Police and Fire Disability Pension Found. The second draft provided the City would pay 10% of the employee portion to the pension fund. The third draft provided the City would pay 5% of the employee portion to the pension fund. The City rejected the drafts which required the City to pay any percentage of the employee contribution to the pension fund.

{¶7} The FOP then filed an Unfair Labor Practice Charge ("ULP") with SERB on September 14, 2015. On January 28, 2016, SERB dismissed the charge for lack of probable cause.

{¶8} On July 28, 2016, the FOP filed a complaint against the City to compel arbitration. The FOP sought an order compelling the City to "submit this dispute to binding arbitration for resolution as required by the Collective Bargaining Agreement between the

parties." The complaint alleges the parties agreed to arbitrate the "pension pick-up dispute."

{¶9} The City filed an answer to the complaint on August 19, 2016. The City also filed an opposition to the FOP's motion to compel arbitration and filed a motion to dismiss complaint on August 29, 2016. The City denied it had a contractual obligation to arbitrate the grievance involving pension pick-up. Further, the City stated that the FOP's sole remedy regarding contract formation issues under R.C. 4117.11 is the filing of an unfair labor practice, a process which had been completed. Attached to the City's answer as Exhibit 1 is the unfair labor practice charge filed by the FOP against the City on September 14, 2015. The unfair labor practice charge details the pension pick-up dispute. In the charge, the FOP stated:

> On or about August 17, 2015, the Employer informed the FOP that it believed that the City was not required to pay any portion of the employees' contribution to the pension system and has refused to sign the collective bargaining agreement. The Employer's failure to negotiate in good faith and its refusal to execute the collective bargaining agreement is an unfair labor practice in violation of R.C. 4117.11(A)(1) & (5).

{¶10} Attached as Exhibit 2 to the City's answer is the January 28, 2016 dismissal of the unfair labor practice charge. In the dismissal, SERB characterized the FOP's charge as, "Charging Party alleged Charged Party violated Ohio Revised Code Section 4117.11(A)(1) and (5) by failing to provide a 5% pension pick up that the employees in a different union are receiving." SERB found there was no probable cause to believe the City violated R.C. 4117.11 and dismissed the charge with prejudice.

{¶11}  The trial court held an oral hearing on the complaint and motion to dismiss on November 29, 2016.  In a December 5, 2016 judgment entry, the trial court found that SERB does not have exclusive jurisdiction over the issues raised in the complaint and set the matter for a bench trial to determine whether arbitration should be compelled.

{¶12}  The trial court conducted a bench trial on September 21, 2017.  Charles Choate, ("Choate") senior staff representative for the FOP, testified.  Choate stated he did not make a written proposal in this set of negotiations for a successor Collective Bargaining Agreement to change Article 21, Section 03 and require the employer to pick-up part of the pension.  Further, that it was not discussed during the negotiation before fact-finding whether the City agreed to pick-up part of the pension.  Brett Hillyer ("Hillyer"), law director for the City, testified the FOP did not write a written proposal to modify or change Article 21, section 03 regarding the pension pick-up.  Further, that the FOP did not include the pension pick-up issue as an unresolved issue before the fact-finder.

{¶13}  The parties also submitted several exhibits at the bench trial.  The first exhibit is a copy of the SERB fact-finder's findings and recommendations dated May 20, 2015, in the matter of fact-finding between the FOP and the City.  In the "background" portion of the findings, the fact-finder stated the parties negotiated a Memorandum of Understanding in 2012 and "it contained language which required the officers to pay a large portion of the employees' contribution to the employee's pension fund.  This resulted in a net decrease in pay for members of the bargaining unit."  In the "discussion and recommendations" portion of the document, the fact-finder addressed issues under Article 18, Article 21, and Article 30.  The specific issue addressed in Article 21 is that the FOP proffered two proposals, one for a wage increase and one for an increase in the annual

clothing allowance, and the City objected to both proposals.  In his discussion as to why he was recommending a modest pay increase, the fact-finder noted that, "due to the language which requires them to make a larger contribution to their pension funds, their net pay is less than it would have been in 2011."

{¶14}  Also submitted as an exhibit is the MOU between the FOP and the City. The MOU states it modifies the terms of the Collective Bargaining Agreement effective January 1, 2012 through December 31, 2014 and provides that "with the exception of modifications made in this Agreement, all terms and conditions as set forth in the Agreement shall remain in full force and effect until such time as modified through mutual agreement."  In the MOU, the parties agreed to modify Article 21, Section 03 to state, "the bargaining unit members shall be responsible for the full amount of the statutorily required employee contribution into the pension system."

{¶15}  Finally, the CBA is submitted as an exhibit.  Article 5 of the CBA details the grievance procedure and provides a "grievance" is "any alleged violation, including disciplinary matters, of this Agreement or any dispute with respect to its meaning or application and shall be subject to the procedures set forth herein."  The grievance procedure lists the following steps: Step 1 – Informal (grievant must attempt to resolve informally with his/her immediate supervisor); Step 2 – Shift Supervisor (grievance presented in writing to shift supervisor); Step 3 – Chief of Police (appeal to Chief of Police); Step 4 – Mayor (appeal to Mayor); and Step 5 – Arbitration (if the grievance is not satisfactorily settled at Step #4, the F.O.P may file a request for arbitration).  Article 5 also provides that, "the decision of the arbitrator shall be final and binding on the parties.

The arbitrator shall not have the power to add or subtract from or modify any of the terms of the Agreement."

{¶16} The City filed a post-hearing brief on October 27, 2017. The FOP filed a post-hearing brief on November 3, 2017.

{¶17} The trial court issued a judgment entry on December 21, 2017. The trial court found the FOP is entitled to arbitration regarding the application of the parties' agreement under terms of Article 5, Section 01 of the CBA. Thus, the trial court granted the FOP's motion to compel arbitration.

{¶18} The City appeals the December 21, 2017 judgment entry of the Tuscarawas County Court of Common Pleas and assigns the following as error:

{¶19} "I. THE TRIAL COURT COMMITTED ERROR BY NOT DISMISSING THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION.

{¶20} "II. THE TRIAL COURT ERRED BY NOT RECOGNIZING THE DISTINCTION BETWEEN CONTRACT FORMATION AND CONTRACT INTERPRETATION.

{¶21} "III. THE TRIAL COURT COMMITTED ERROR BY ORDERING ARBITRATION ON A SUBJECT NOT CONTAINED IN THE CONTRACT BETWEEN THE PARTIES."

*Standard of Review*

{¶22} A trial court's decision on a motion to compel arbitration is "subject to de novo review on appeal with respect to issues of law, which will commonly predominate because such cases generally turn on issues of contractual interpretation * * *." *Hudson v. John Hancock Fin. Servs.,* 10th Dist. Franklin No. 06AP-1284, 2007-Ohio-6997;

*McFarren v. Emeritus at Canton*, 5th Dist. Stark No. 2013CA00040, 2013-Ohio-3900. Further, the "issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide upon examination." *Id.; Rona Ents., Inc. v. Vanscoy*, 5th Dist. Perry Nos. 09CA6, 09CA8, 2010-Ohio-1836. In this case, the trial court's determination to grant the motion to compel arbitration is reviewable under a de novo standard, as the conclusions involve legal determinations. Accordingly, we need not defer to the trial court's decision. *McFarren v. Emeritus at Canton*, 5th Dist. Stark No. 2013CA00040, 2013-Ohio-3900; *Estate of Heath v. Grange Mut. Cas. Co.*, 5th Dist. Delaware No. 02CAE05023, 2002-Ohio-5494.

{¶23} Ohio's public policy favoring arbitration is codified at R.C. Chapter 2711. Under R.C. 2711.01(A), a written arbitration clause "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." If a party moves to stay proceedings pending arbitration or compel arbitration pursuant to an agreement in writing for arbitration, the court must first satisfy itself "that the issue involved in the action is referable to arbitration" under the agreement. R.C. 2711.02(B). Thus, the trial court must "determine ultimately whether an arbitration provision is enforceable" and be satisfied that the relief sought is appropriate before issuing an order to stay or compel arbitration. *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 800 N.E.2d 7 (2003).

## I., II., III.

{¶24} In its assignments of error, the City contends the trial court erred in granting the FOP's complaint/motion to compel arbitration. The City contends SERB has exclusive jurisdiction over this issue as it is an unfair labor practice allegation. The FOP argues

they do not allege an unfair labor practice, but are alleging a dispute as to the meaning of the CBA, and that interpretation of the terms to the CBA are claims to be decided by an arbitrator, not SERB. We agree with the City.

{¶25} In Revised Code Chapter 4117, Public Employees' Collective Bargaining, the legislature "established a comprehensive framework for the resolution of public-sector labor disputes by creating a series of new rights and setting forth specific procedures and remedies for the vindication of those rights." *State ex rel. City of Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88. The Ohio Supreme Court has held that SERB "has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117. If a party asserts rights that are independent of R.C. Chapter 4117, the party's complaint may properly be heard in common pleas court. However, if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive." *Franklin Co. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991). While SERB's jurisdiction is not so broad as to place all claims that touch on R.C. Chapter 4117 within its jurisdiction, "exclusive jurisdiction to resolve unfair labor practice charges is vested in SERB in two general areas: (1) where one of the parties filed charges with SERB alleging an unfair labor practice under R.C. 4117.11 and (2) where a complaint brought before the common pleas court alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11." *State ex rel. City of Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88.

**{¶26}** In cases decided by the Ohio Supreme Court, they have held that SERB had exclusive jurisdiction: over claims for injunctive relief regarding a settlement agreement between the public entity and the union and the trial court lacks jurisdiction when the union claimed the city failed to abide by an agreement reached through collective bargaining negotiations; over a claim that the CBA between an FOP and the commissioners was invalid because the sheriff had not approved it; and over a claim as to whether the City had a duty to perform in accordance with their last pre-strike offer. *State ex rel. Ohio Civil Service Employees Assn. v. State of Ohio*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913; *Franklin Co. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991); *State ex rel. City of Cleveland v. Sutula*, 127 Ohio St.3d 131, 2010-Ohio-5039, 937 N.E.2d 88. Further, the Supreme Court held that simply couching allegations of an application to vacate arbitration award in common pleas court in language comparable to that found in the arbitration provision of R.C. 2711 was insufficient to vest jurisdiction in the common pleas court. *State ex rel. Ohio Dept. of Mental Health v. Nadel*, 98 Ohio St.3d 405, 2003-Ohio-1632, 786 N.E.2d 49 (2003).

**{¶27}** However, the Supreme Court has also held that parties can settle differences in interpreting provisions of their CBA agreement through the process of binding arbitration. *City of East Cleveland v. East Cleveland Firefighters Local 500, I.A.F.F.*, 70 Ohio St.3d 125, 637 N.E.2d 878 (1994).

**{¶28}** The Supreme Court has consistently held that the dispositive test "remains whether the claims arise from or depend on collective-bargaining rights created by R.C. Chapter 4117." *Id; Franklin Co. Law Enforcement Assn. v. Fraternal Order of Police,*

*Capital City Lodge No. 9*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991); *State ex rel. Ohio Civil Service Employees Assn. v. State of Ohio*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913.

{¶29} In their complaint, the FOP states the dispute to be arbitrated is the "pension pick-up issue." The FOP characterizes this dispute as a dispute involving contract interpretation. We disagree. After a contract has been negotiated, disputes arising that involve interpretation of specific provisions of the CBA are subject to arbitration. However, this case does not involve interpretation of a specific provision of a CBA that has been negotiated.

{¶30} In this case, the issue regarding Article 21, Section 03 involves the contract formation and negotiation process. The parties commenced negotiations for a successor agreement to the CBA that was effective until 2014, but were unable to reach an agreement on all terms. OAC 4117-9-05 requires a party who is seeking to change a CBA to provide a "statement defining all unresolved issues and summarizing the position of the party with regard to each unresolved issue." Pursuant to OAC 4117-9-05, the parties submitted their contested issues to a fact-finder with SERB. Neither party proposed a change in Article 21, Section 03. The fact-finder recognized in his report and recommendations that the MOU required the members of the FOP to pay a large portion of the pension fund contribution and based his recommendation of a modest pay increase, in part, because of the pension contribution language in the MOU. The fact-finder issued his report on May 20, 2015 and both parties accepted this report.

{¶31} The parties then were to draft the successor CBA, which would incorporate any negotiated changes, plus those changes recommended by the fact-finder. The FOP

created multiple drafts of the successor CBA.  The first draft did not provide for the City to pay any of the employee portions of the Police and Fire Disability Pension Found.  The second draft provided the City would pay 10% of the employee portion to the pension fund.  The third draft provided the City would pay 5% of the employee portion to the pension fund.  The City rejected the drafts which required the City to pay any percentage of the employee contribution to the pension fund.

**{¶32}** We find the FOP's claims stemmed directly from rights and remedies created by R.C. Chapter 4117.  The FOP claims the City failed to execute the CBA with the pension pick-up language included by the FOP after negotiations which were conducted in accordance with R.C. Chapter 4117.   The negotiation process as contemplated by R.C. 4117.14 concerns contract formation issues, not contract interpretation issues.  Because the FOP's claims are dependent on the framework established in R.C. Chapter 4117, the FOP was limited to the remedies and procedures provided in that chapter and SERB has exclusive jurisdiction over the FOP's claims.

**{¶33}**  Additionally, we find the FOP's complaint to compel arbitration is a collateral attack on the SERB decision.  The unfair labor practice charge details the pension pick-up dispute and the FOP stated in the charge that the City's refusal to sign the collective bargaining agreement was a failure to negotiate in good faith and is an unfair labor practice in violation of R.C. 4117.11(A)(1) & (5).  Further, in the dismissal of the unfair labor practice charge, SERB characterized FOP's charge as an allegation that the City violated R.C. 4117.11(A)(1) and (5) "by failing to provide a 5% pension pickup that the employees in a different union are receiving."  SERB found there was no probable cause to believe the City violated R.C. 4117.11 and dismissed the charge with prejudice.  The

FOP now attempts to arbitrate the same claim as they made in the ULP case, whether the City was required to execute the CBA with the pension pick-up language. We find such an arbitration is an improper collateral attack on SERB's determination there was no probable cause to believe the City violated R.C. 4117.11 by failing to provide the 5% pension pick-up.

{¶34} Further, the Ohio Supreme Court has also held that, "an action in mandamus is the appropriate remedy to obtain judicial review of orders by the State Employment Relations Board dismissing unfair labor practice charges for lack of probable cause." *State ex rel. Service Employees Internat'l Union, District 925 v. State Employment Relations Board*, 81 Ohio St.3d 173, 1998-Ohio-463, 689 N.E.2d 962; *State ex rel. Ohio Dept. of Mental Health v. Nadel*, 98 Ohio St.3d 405, 2003-Ohio-1632, 786 N.E.2d 49 (2003) (holding when the appellant failed to file a writ of mandamus to challenge SERB's dismissal of his unfair labor practice charge, the common pleas court does not have jurisdiction over appellant's motion to vacate arbitration award). In this case, if the FOP sought judicial review of SERB's dismissal of their claim that the City refused to execute the collective bargaining agreement and refused to negotiate in good faith when it informed the FOP the City was not required to pay any portion of the employees' contribution to the pension system, the proper avenue to do so was an action in mandamus after the January 28, 2016 dismissal of the unfair labor practice charge.

{¶35} The FOP also argues that the presumption in favor of arbitration compels arbitration in this case. The Supreme Court of Ohio has recognized Ohio's public policy favoring arbitration. *Taylor Bldg. Corp. of America v. Benfield*, 117 Ohio St.3d 352, 884 N.E.2d 12 (2008). However, arbitration is a matter of contract and, despite the strong

policy in its favor, a party cannot be compelled to arbitrate any dispute that he has not agreed to submit. *Grady v. Winchester Place Nursing & Rehab. Center*, 5th Dist. Fairfield No. 08 CA 59, 2009-Ohio-3660; *Neofores v. Branddirect Marketing, Inc.*, 5th Dist. Richland No. 02-CA-0012, 2002-Ohio-4841; *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 687 N.E.2d 1352 (1998).

{¶36} As discussed above, while the parties agreed to arbitration as part of the grievance procedure when a dispute involves interpretation of the specific provisions of the CBA, the parties did not agree to arbitrate their disputes during contract negotiations and contract formation. Article 5 of the CBA defines "grievance" as "any alleged violation, including disciplinary matters, of this Agreement or any dispute with respect to its meaning or application." Article 5 presupposes that the terms and conditions of the CBA have been established and compels arbitration on an alleged violation of the CBA, on what the provisions mean, and on whether the provisions apply in a certain circumstance. In this case, the terms and conditions of the CBA have not been established, as evidenced by the multiple drafts drafted by Choate after the fact-finder's recommendations.

{¶37} The FOP also contends the City is attempting to make the trial court rule on the potential merits of their underlying claims, in violation of the trial court's duty pursuant to Chapter 2711 on arbitration. We disagree. While a court may not rule on the potential merits of an underlying claim when deciding whether the parties have agreed to submit a particular claim to arbitration pursuant to *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 687 N.E.2d 1352 (1998), "an analysis of whether a dispute falls within the scope of an arbitration agreement should logically follow the initial determination whether the parties ever entered into an agreement in the first place."

*Trinity Health System v. MDX Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, 907 N.E.2d 746 (7th Dist.); *Mason v. Mason*, 5th Dist. Stark No. 2016CA00208, 2017-Ohio-5787.  In this case, the decision as to whether to grant or deny the motion to compel and the decision as to whether dismiss or not dismiss the complaint comes directly from the analysis of whether the dispute falls within the scope of the arbitration agreement in Article 5.

{¶38}  Based on the foregoing, appellant's assignments of error are sustained.

{¶39}  The judgment entry of the Tuscarawas Court of Common Pleas is reversed, and the FOP's complaint to compel arbitration is dismissed.

By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J., concur